McGUIRE SHAFT AND TUNNEL CORPORATION, a corporation, Plaintiff-Appellee,

v.

LOCAL UNION NO. 1791, UNITED MINE WORKERS OF AMERICA et al., Defendants-Appellants.

OLD BEN COAL CORPORATION, a corporation, Plaintiff-Appellee,

v.

LOCAL UNION NO. 1124 OF UNITED MINE WORKERS OF AMERICA et al., Defendants-Appellants.

SOUTHWESTERN ILLINOIS COAL CORPORATION, a corporation, Plaintiff-Appellee,

v.

LOCAL UNION NO. 1392 OF UNITED MINE WORKERS OF AMERICA et al., Defendants-Appellants.

ROBERTS AND SCHAEFER COMPANY, INC., a corporation, Plaintiff-Appellee,

v.

LOCAL NO. 9111, UNITED MINE WORKERS et al., Defendants-Appellants.

Nos. 7-2 to 7-5.

Temporary Emergency Court of Appeals.

Feb. 1, 1973.

Certiorari Denied June 18, 1973.

See 93 S.Ct. 3008.

Duncan B. Cooper, III, Peoria, Ill. (Willard P. Owens, Washington, D. C., and Heyl, Royster Voelker & Allen, Peoria, Ill., were with him on the brief), for appellants.

Paul S. Kuelthau, St. Louis, Mo. (Moller, Talent & Kuelthau, St. Louis, Mo., were with him on the brief in No. 7–2 and Warren W. Browning, Browning & Browning, Chicago, Ill., and Moller, Talent & Kuelthau, St. Louis, Mo., were with him on the brief in No. 7–5), for appellees in Nos. 7–2 and 7–5.

Roger Edgar, St. Louis, Mo. (Veryl L. Riddle and Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., were with him on the brief in No. 7–3 and Dennis C. Donnelly, S. Richard Heymann and Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., were with him on the brief in No. 7–4) for appellees in Nos. 7–3 and 7–4.

John N. Hanson, Washington, D. C. (Harlington Wood, Jr., William E. Nelson, Stanley D. Rose, and Edward A. Lenz, Washington, D. C., were with him on the brief), for the United States, amicus curiae.

Before VAN OOSTERHOUT, ESTES, and HASTINGS, Judges.

ESTES, Judge.

These are appeals from four judgments granting preliminary injunctions against the appellant local labor unions and officers of certain of these locals for violating Pay Board Reg. § 201.17 and for violating the arbitration provisions of collective bargaining agreements between the appellants and appellees by striking to force the appellant construction companies to pay a wage increase disapproved by the Pay Board.

On January 14, 1972, a representative of appellees, McGuire Shaft and Tunnel Corporation (McGuire) and Roberts and Schaefer Company, Inc. (Roberts), entered into a collective bargaining agreement with the International Union, United Mine Workers of America on behalf of the construction workers employed by the coal mine construction companies and coal slope and shaft sinking companies signatory thereto. The agreement provided for wage increases in excess of 18 (about 18.7) per cent. The agreement was submitted to the Pay Board for approval on January 24, 1972. On May 2, 1972, the Pay Board authorized only a 9.54 per cent wage increase. A petition for reconsideration was filed, but on August 1, 1972, the Pay Board reaffirmed its prior decision allowing only 9.54 per cent wage increase.

On August 14, 1972, the construction workers employed by Roberts stopped working at the Orient Number 3 Mine (Local 9111) of Freeman Coal Company and the Randolph preparation plant of Peabody Coal Company (Local 1824) to protest the Pay Board's decision and to force Roberts to pay the unapproved increase. The construction workers employed by McGuire (Local 1781) stopped working on August 18 for the same reasons. The construction worker members of Local 9111 also picketed several coal mines throughout Illinois in an attempt to enlist the aid of other locals in forcing the construction firms to pay the disapproved wage increases. Among these mines were three operated by appellee Old Ben Coal Corp. (Old Ben) and two operated by appellee Southwestern Illinois Coal Corporation (Southwestern). At the two Southwestern mines, Local 9111 pickets were joined by members of Locals 9721 and 1825. The miners employed by both Old Ben (Locals 1124, 1345 and 1487) and Southwestern (Locals 1392 and 7333) refused to cross the picket lines.

The appellees each sought relief in the district court by means of a temporary restraining order and preliminary and permanent injunctions against the involved local unions and the officers of certain of these locals. Each appellee company sought this injunctive relief upon the authority of § 210(a) of the Economic Stabilization Act of 1970, as amended, 85 Stat. 743, Dec. 22, 1971. McGuire, Roberts, and Southwestern also claimed a second basis for the requested injunctive relief. They contend that under the authority of Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L. Ed.2d 199 (1970), the district court

could enjoin the work stoppages as violations of the grievance arbitration obligations of the collective bargaining agreements, despite the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq. The district court issued the requested temporary restraining orders and preliminary injunctions in all four cases, finding authority to do so in both the Economic Stabilization Act and (except in the case brought by Old Ben) the collective bargaining agreements.

■ The defendants appeal. Finding as we do that these injunctions were authorized by the Economic Stabilization Act of 1970, as amended, we find it unnecessary to reach the Boys Markets issue.

The Economic Stabilization Act of 1970 (P.L. 91–379, 84 Stat. 799, Aug. 15, 1970), as amended (P.L. 92–210, 85 Stat. 743, Dec. 22, 1971), authorized the president to issue such orders and regulations as he deemed appropriate to stabilize wages and salaries at levels not less than those prevailing on May 25, 1970. Section 1(a) of Executive Order 11640, issued January 27, 1972, provides that ". . . no person shall, directly or indirectly, pay or agree to pay, in any transaction, wages or salaries in any form, or to use any means to obtain payment of wages and salaries in any form, higher than those permitted hereunder, whether by retroactive increases or otherwise."

Pay Board Reg. § 201.10 [1] established 5.5 per cent as the standard maximum permissible annual wage increase. Higher increases must either meet specific exceptions provided in other Pay Board Regulations or be approved by a decision of the Pay Board. Since the Pay Board approved only a 9.54 per cent wage increase, an increase higher than that would be unlawful. Pay Board Reg. § 201.17 declared it

"a violation of the Pay Board regulations, subject to the sanctions, fines, penalties and other relief provided in the Act, for any person to:

* * * * * *

(c) Induce, solicit, encourage, force, or require, or attempt to induce, solicit, encourage, force or require, any other person to pay or to receive any portion of a wage and salary increase not authorized by such regulations or Pay Board decision; or

(d) Fail or refuse to comply with an order or decision of the Pay Board or to induce, solicit, encourage, force or require any other person to fail or refuse to comply with an order or decision of the Pay Board.

"Notwithstanding paragraph (c) of this section, it shall not be a violation to bargain for, request, contract for or agree to (as contrasted with paying or receiving) a wage and salary increase in excess of the maximum permissible annual aggregate wage and salary increase. The preceding sentence shall not apply to those situations where the Board has denied an appeal from a determination by the Internal Revenue Service, or rendered a decision on a pay challenge or request for an exception." [2]

The union work stoppages and picket lines were an effort to force, through both direct and indirect pressures, the construction companies to pay an unlawful wage increase. Such actions are violations of Executive Order 11640 and the Pay Board regulations.

The appellants contend that the Economic Stabilization Act of 1970, as amended, does not provide the right for private parties to obtain injunctions against violations of the act and the orders and regulations promulgated thereunder.

1. Issued on Nov. 13, 1971, amended Dec. 27, 1971 (36 F.R. 25427); reissued on Nov. 23, 1972, as § 201.10 without material change (37 F.R. 24960).

2. 37 F.R. 4899, March 7, 1972; the substance of § 201.17 was reissued on November 23, 1972, as § 201.41 (37 F.R. 24960).

Section 210(a) of the act provides:

"Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations of section 211), and/or damages."

This section clearly gives parties the right to obtain injunctive relief for harm suffered from violations of the act and implementing orders and regulations, subject only to the restrictions upon the district court's injunctive power provided in § 211[3] of the Act. The restrictions in § 211 are directed at limiting the power of the judiciary to impede the enforcement, operation, or execution of the Economic Stabilization Program. Since the cases *sub judice* are not concerned with enjoining the implementation of the stabilization program, but rather with enjoining violations thereof, the provisions of § 211 are inapplicable.

Since the statute is clearly written, and the "injunction" issued in these cases was "appropriate relief" specifically provided in § 210(a), it is unnecessary to look to the legislative history to ascertain the intent of Congress; however, the rather sketchy legislative history on this subject supports our interpretation. The bulk of the legislative history which concerns injunctions relates to § 211 and the Congress's and the Administration's concern with the "avoidance of any breaks or stays in the operation of the Stabilization Program."[4] The Administration's proposed amendments to the Economic Stabilization Act of 1970, considered concurrently by both the House[5] and the Senate[6], contained a section on judicial review which was subsequently revised by Congress and enacted as the present § 211. While there was no provision in the Administration's proposed amendments to the act corresponding to the present § 210, the hearings before the Senate Committee on Banking, Housing and Urban Affairs reflect that concern was expressed by a senator that the Administration's proposal did not provide "an individual,

3. § 211. Judicial review

(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy . . . .

\* \* \* \* \*

(d) (1) Subject to paragraph (2), no regulation of any agency exercising authority under this title shall be enjoined or set aside, in whole or in part, unless a final judgment determines that the issuance of such regulation was in excess of the agency's authority, was arbitrary or capricious, or was otherwise unlawful under the criteria set forth in section 706 (2) of title 5, United States Code, and no order of such agency shall be enjoined or set aside, in whole or in part unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence.

(2) A district court of the United States or the Temporary Emergency Court of Appeals may enjoin temporarily or permanently the application of a particular regulation or order issued under this title to a person who is a party to litigation before it. Appeals from interlocutory decisions by a district court of the United States under this paragraph may be taken in accordance with the provisions of section 1292(b) of title 28, United States Code; except that reference in such section to the courts of appeals shall be deemed to refer to the Temporary Emergency Court of Appeals.

(e) (1) Except as provided in subsection (d) of this section, no interlocutory or permanent injunction restraining the enforcement, operation, or execution of this title, or any regulation or order issued thereunder, shall be granted by any district court of the United States or judge thereof . . . .

4. Senate Comm. on Banking, Housing and Urban Affairs, S.Rep.No.92–507, 92d Cong.1st Sess. (1971), U.S.Code Congressional and Administrative News 2283 at 2292.

5. Hearings on H.R. 11309 before the House Comm. on Banking and Currency, 92d Cong., 1st Sess. at 305 (1971).

6. Hearings on S. 2712 before the Senate Comm. on Banking, Housing and Urban Affairs, 92d Cong., 1st Sess. at 2 (1971).

*aggrieved by a violation,* . . . a/ right to go to court and seek injunctive relief or damages." [7] The administration representative replied that there was an avenue for collecting damages. Subsequent to these hearings, this Senate Committee wrote § 210(a) in the identical language which was finally enacted as § 210(a) of the act, as amended.

Furthermore, the House version of the amendment contained a similar § 210(a) provision; however, that provision provided that the appropriate relief an individual could obtain included "an action for a declaratory judgment, and/or damages." [8] Even though neither the Administration proposal nor the House Bill provided the individual with the right to obtain injunctive relief, they each provided severe limitations on the power of the courts to enjoin the enforcement, operation and execution of the stabilization program. Clearly, the limitations on the federal courts' authority to enjoin agencies of the government in the execution of the act, orders, and regulations thereunder were not considered synonymous with the right of an individual injured by violations of the program to enjoin those violations.

■ Having determined that a private party is entitled to obtain an injunction against violation of the Economic Stabilization Program, we face the issue of whether the anti-injunction provisions of the Norris-LaGuardia Act prohibit the granting of such an injunction against a labor union. There is nothing in either the Economic Stabilization Act or its legislative history to

indicate any distinction between suits initiated by a private party under § 210(a) or by the Attorney General under the provisions of § 209 [9] in so far as the applicability of the Norris-LaGuardia Act is concerned. On the contrary, it was clearly indicated that for the Economic Stabilization Program to work, it would be necessary for government enforcement to be supplemented by voluntary private efforts.

Section 209 provides that the district court may "issue mandatory injunctions commanding *any person* to comply with any . . . order or regulation" under the act. As stated by Representative Ryan of New York in presenting to the House the amendments as agreed upon by the Conference Committee for final passage of the bill, "Injunctive relief is . . . available to any person authorized by the President to exercise authority under this act to prevent *any person or organization* from violating this act." [10] The significance of this legislation is expressed in § 202 of the act:

"It is hereby determined that in order to stabilize the economy, reduce inflation, minimize unemployment, improve the Nation's competitive position in world trade, and protect the purchasing power of the dollar, it is necessary to stabilize prices . . . wages [and] salaries. . . . The adjustments necessary to carry out this program require prompt judgments and actions by the executive branch of the Government."

It is inconceivable that Congress would announce the national importance

---

7. Senator Stevenson, Hearings on S. 2712, *supra,* at 43 (emphasis added).

8. 117 Cong.Rec.H. 12259 (daily ed. Dec. 10, 1971).

9. § 209. Injunctions and other relief
    Whenever it appears to any person authorized by the President to exercise authority under this title that any individual or organization has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any order or regulation under this title, such person may request the Attorney General to bring an action in the appropriate dis-

trict court of the United States to enjoin such acts or practices, and upon a proper showing a temporary restraining order or a preliminary or permanent injunction shall be granted without bond. Any such court may also issue mandatory injunctions commanding any person to comply with any such order or regulation. In addition to such injunctive relief, the court may also order restitution of moneys received in violation of any such order or regulation.

10. 117 Cong.Rec.H. 12532 (daily issue, Dec. 14, 1971) (emphasis added)

of stabilizing wages and then exempt labor unions from the principal means of enforcement, an injunction.

In light of the importance of the Economic Stabilization Program to economic welfare of the United States, the Norris-LaGuardia Act must be interpreted to accommodate the overriding Congressional intent expressed in the Economic Stabilization Act. Such accommodations have been made in the past when the provisions of the Norris-LaGuardia Act conflicted with other specific intentions of Congress.[11]

Furthermore, the Norris-LaGuardia Act was designed primarily to protect working men in the exercise of organized economic power, which is vital to collective bargaining. Enforcement of the Economic Stabilization Act by injunctions will not detract from collective bargaining.[12]

■ In cases No. 7–3 and 7–5, the appellants argue that the strikes and picketing were spontaneous actions on the part of individual members of the local unions and that the locals and their officers cannot be held responsible. The evidence is that the construction workers as a group struck and formed picket lines which the miners refused to cross. At subsequent meetings of the members of the various locals involved, the members voted to remain out. Although some officers of the locals made verbal attempts to get the members back to work, they participated in the strike themselves. The evidence supports the trial court's finding that these activities were the activities of the local unions in an effort to force the construction companies to pay wages in violation of the Economic Stabilization Act and implementing orders and regulations.

■■ The issuance of a preliminary injunction is a matter committed to the

11. Allen Bradley Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945); Virginia Railway Co. v. System Federation No. 40, Railway Employees Department of the A.F.L., 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); Graham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949); Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). Although this point had not been raised in previous cases before this court, the court has already upheld injunctions against labor unions violating the act and the regulations and orders promulgated thereunder. Local 117 of Amalgamated Meat Cutters and Butcher Workmen of North America v. United States, 468 F.2d 946 (Em.App.1972); United States v. International Brotherhood of Electrical Workers, Local No. 11, 475 F.2d 1204 (Em.App.1973).

12. In its brief as amicus curiae, the United States advances the proposition, which we do not find it necessary to decide, that the Norris-LaGuardia Act is not applicable here because the basic dispute does not come within the Act's definition of a "labor dispute." See 29 U.S.C. § 113(c). The Government contends that this is so because (1) the subject matter of the dispute being unlawful means that no valid "labor dispute" as to it can exist, and (2) the actual controversy being between a union and a regulatory agency, there is no labor dispute between the parties involved here.

For the first point, the Government cites NLRB v. Indiana Desk Co., 149 F.2d 987 (7 Cir. 1945), and dictum in Order of R.R. Telegraphers v. Chicago & North Western Ry., 362 U.S. 330, 340, 80 S.Ct. 761, 4 L.Ed.2d 774 (1960). We do not consider it necessary to decide this point.

Khedivial Line, S.A.E. v. Seafarers' International Union, 278 F.2d 49 (2 Cir. 1960), is cited for its holding that the Norris-LaGuardia Act prohibition against grant of injunctions in labor disputes does not extend to picketing directed against the policies of the [foreign] government of which the employer is a subject, as distinguished from picketing directed against activities of the employer. The union activity here does not seem to be exclusively in protest of the Pay Board action. The predominant intent, as found by the court below, is to force the employers to take certain action unlawful under the Economic Stablization Act.

sound discretion of the trial court and can be overturned by an appellate court only where it has been a clear abuse of discretion. The proper standard for review has been thus stated by the D.C. Circuit in Quaker Action Group v. Hickel, 137 U.S.App.D.C. 176, 421 F.2d 1111, 1116, as follows:

"The standards which should guide the decision to grant a preliminary injunction have been often stated. The movant must show a substantial likelihood of success on the merits, and that irreparable harm would flow from the denial of an injunction. In addition, the trial judge must consider the inconvenience that an injunction would cause the opposing party, and must weigh the public interest as well."

See Pauls v. Secretary of Air Force, 457 F.2d 294, 298 (1 Cir. 1972); Unicon Management Corp. v. Koppers Co., 366 F.2d 199 (2 Cir. 1966).

We agree with such standard. When such standard is applied to the facts of these cases, it is clearly established that the trial court did not abuse its discretion in granting the preliminary injunction in each of these cases.

Appellants in cases No. 7–2 and 7–5 further contend that the preliminary injunctions issued by the district court were overbroad. We agree. As indicated in Boys Markets and Old Ben Coal Corp. v. Local Union No. 1487 of United Mine Workers of America, 457 F.2d 162 (7 Cir. 1972), a cautious approach is required when enjoining labor unions. These injunctions should be limited to restraining the defendants and all persons acting in concert with them from engaging in a strike, picketing, inducing any individual or members of any other organization to strike and picket, or in any other manner inducing, soliciting, encouraging, forcing or requiring or attempting to induce, solicit, encourage, force or require the plaintiffs to pay any portion of a wage increase not authorized by the Economic Stabilization Act of 1970, as amended, and orders and regulations implementing it. As so modified, the judgments are affirmed.