**COLONIAL SAND & STONE CO., INC., et al., Plaintiffs,**

v.

**James GEOGHEGAN, as President, et al., Defendants.**

**No. 73 Civ. 3719 KTD.**

United States District Court, S. D. New York.

Sept. 18, 1973.

Goodstein, Zamore, Mehlman & Krones, New York City, for plaintiffs; Fred H. Krones, Isidore Zamore, New York City, of counsel.

Cohen, Weiss & Simon, New York City, for defendants; Bruce H. Simon, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This case was brought to this court by removal from the New York State Supreme Court. The plaintiffs seek a preliminary and permanent injunction restraining the individual defendants and the union of which they are officers from calling or continuing to call a strike or picketing the plaintiffs' premises. Both sides admit that no court has passed upon a problem similar to that presented by the facts of this case.*

The plaintiffs are engaged in interstate commerce as manufacturers and transporters of ready-mix concrete, sand, gravel, asphalt and bulk cement. For many years the truck driver-employees or "chauffeurs" of the plaintiffs have been represented by the defendant Union. The last formal collective bargaining agreement between the parties expired by its terms on June 30, 1972. Apparently the Union did not strike on the expiration of the contract but collective negotiations continued through the ensuing months until April 23, 1973, when the negotiating committees initialled a twenty page document which was subject to ratification by the Union membership. As is usual in such circumstances, neither side was completely satisfied but both were apparently willing to accept and live with the bargain struck in the April 23, 1973 document. The Union presented the terms and conditions agreed upon to their membership for ratification, and on May 3, 1973, the Union membership ratified the bargain.

The "Agreement of April 23, 1973 contained, *inter alia*, the following provisions:

"The employers and the Union agree that they shall jointly submit this Agreement to the appropriate government agency requesting approval, if submission is required, and that they will exercise their best good faith efforts to secure approval.

\* \* \* \* \* \*

"Within 2 wks. [sic] after CISC approval, if required, retroactive pay shall be made in two equal weekly installments by separate check."

The CISC referred to in the above-quoted language stands for the Construction Industry Stabilization Committee established by Executive Order # 11588 (36 CFR 6339, April 3, 1971) under the Economic Stabilization Act of 1970, [set out as a note under 12 U.S.C. § 1904] 84 Stat. 799 as amended, and by delegation of authority from the Cost of Living Council to the CISC.

On June 19, 1973, representatives of the defendant Union wrote to the appropriate sub-committee of the CISC requesting a ruling that the "Agreement" between the plaintiffs and the Union represented by the April 23, 1973 document "is not subject to CISC jurisdiction . . ."

---

* Subsequent to the filing of this opinion, counsel notified the Court that a case in point had been found. See McGuire Shaft & Tunnel Corp. v. Local Union 1791, UMW, 475 F.2d 1209 (Temp.Emer.Ct. of App.), cert. denied, 412 U.S. 958, 93 S.Ct. 3008, 37 L.Ed. 2d 1009 (1973).

On July 17, 1973, the sub-committee of the CISC met and considered the problem but was unable to make a determination on the request. Thereafter, on July 25, 1973, the question was submitted directly to the CISC. On August 24, 1973, the CISC had not rendered a decision on the sole question presented to it by the parties, i. e., whether the agreement was within the purview of the jurisdiction of the CISC.

On August 24, 1973, the parties have stipulated, the chauffeur-members of defendant Union refused to work for the plaintiffs. There is sharp dispute as to whether this refusal to work was inspired by the Union through its leadership. I find, based on the evidence presented at the hearing for the preliminary injunction, that the Union leadership instigated and called the strike.

The CISC apparently was immediately notified of the Union action. On August 30, 1973, the CISC authorized the payment (including the retroactive pay) of the wage increases bargained for between the parties and contained in the April 23, 1973 "Agreement". The CISC ruling was:

". . . taken without prejudice to its consideration of the matter of jurisdiction."

and provided further:

". . . any economic adjustments other than those listed above have not been approved by the Committee and may not be placed into effect."

In effect, the CISC by its "decision" (without deciding it had jurisdiction) left open only one item of the bargain— that relating to shop stewards. That clause provides basically that shop stewards will spend no more than two hours a day on union business if there are less than 14 trucks making deliveries from the barn. The bargain provides that:

". . . when 15 or more trucks make deliveries from a barn on any day, the Steward shall spend the time necessary (within his normal workday) to perform his functions in a re-sponsible manner and may be assigned incidental duties by the employer."

Prior to the August 30, 1973 decision of the CISC, the plaintiffs instituted the instant action seeking to enjoin the violation by the Union of its "no-strike" clause. This Court on August 29, 1973, entered a Temporary Restraining Order against the Union and the cause came on for hearing for a preliminary injunction before me.

The Union has argued that the Temporary Restraining Order should be dissolved and no injunction should issue because:

(1) there is no contract between the parties since no formal agreement has been signed by the President or the Secretary-Treasurer of the Union; (2) there is a complete prohibition against the granting of such relief by this Court in the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.;* and (3) the action of the Union is an exercise of free speech as guaranteed by the First Amendment to the Constitution and cannot be subjected to a "prior restraint" by way of an injunction entered by this Court.

The Union's first argument must fall on a close inspection of the facts. The plaintiffs do not constitute a trade association. Apparently an *ad hoc* committee of the ready-mix industry meets solely for presenting a united front in negotiating with the Union; but each employer insists on signing a separate counterfoil of the agreement with the Union. This is done also for the benefit of the Union because employers enter the industry from time to time and the Union spells out their proposed obligations in the form agreement, which is presented to the new entrant when its employees are organized. It is with a view toward possible new entrants to the industry that the Agreement of April 23, 1973 renewed the old contract clause Section 30 which provides:

"This agreement must be countersigned by either the President or the Secretary-Treasurer of the Union and is not valid unless so countersigned."

The Union argues that there is no valid contract between it and the plaintiffs because the Agreement of April 23, 1973 was not formalized by the signature of the President or Secretary-Treasurer, as required by this clause.

 I find that it was not the intention of the parties to require this formalism and that a binding collective bargaining agreement came into being upon the ratification of the agreement by the Union members. The lack of the purely ministerial act of the signing of the formal contract does not obviate the fact that there was a binding contract.

Indeed, this conclusion is compelled by the actions of the defendant Union itself. In its submission to the CISC the Union described the member-ratified April 23, 1973 document as "the collective bargaining agreement recently negotiated between" the Union and the plaintiffs. The Union on behalf of its members has accepted the benefits of the agreement permitted by the CISC and cannot now be permitted to place mere form over substance. If the plaintiff employers attempted to deny the Union members the agreed-upon benefits (approved by CISC) on the basis of this formality I am morally certain that the Union would agree completely with my reasoning.

We turn then to the Union's second argument that the Norris-LaGuardia Act prohibits the issuance by this Court of any injunction in this case. Section 4 of that Act (29 U.S.C. § 104) provides in relevant part as follows:

"No court of the United States shall have jurisdiction to issue any restraining order of temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment;"

* * * * * *

"(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified regardless of any such undertaking or promise as is described in Section 103 of this title."

The Union argues that this prohibition is all encompassing as to disputes between an employer and the Union representing its employees. The one exception to this prohibition admitted by the Union is that carved out by the Supreme Court in Boys Markets, Inc. v. Retail Clerks, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), which involved a dispute which should have been submitted to arbitration under the collective bargaining contract. I will discuss the reasoning of the Boys Markets case later; suffice it to say now that both sides in the case at bar agree that the dispute is not subject to arbitration although the contract does contain an arbitration clause. Cf. Portland Web Pressmen's Union, Local 17 v. Oregonian Publishing Company, 286 F.2d 4 (9th Cir., 1960), cert. denied, 366 U.S. 912, 81 S.Ct. 1086, 6 L.Ed.2d 237 (1961).

The short answer to the Union's argument is simply that there is no labor dispute involved here. The Union and the plaintiffs-employers have agreed to all of the terms and conditions of the employment of the Union members. There is no question of Union membership or Union representation. Section 13 of the Norris-LaGuardia Act (29 U.S.C. § 113) provides:

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiation fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

 It is clear to my mind that there is no "labor dispute" involved in the case at bar. Farrand Optical Co. v. Lo-

cal 475, International Union of Electrical Radio and Machine Workers, AFL–CIO, 143 F.Supp. 527 (S.D.N.Y.1956). At best there is a dispute between the plaintiffs and the defendants on one side and the CISC on the other, the dispute growing out of the failure or refusal of the CISC to resolve whether it has jurisdiction over the collective bargaining agreement between the parties.

I am absolutely appalled at this state of affairs. At least nine weeks have gone by since the question of jurisdiction was submitted to the CISC and although one "decision" has been made in the premises by the CISC, there is still no resolution as to whether CISC will entertain jurisdiction over the contract between the parties. I am among the first to recognize that executive agency action is very slow, particularly where grave economic problems are presented, but I find it most difficult to plumb the rationale which would permit an economic change of 98% of that called for by a collective bargaining agreement without even a ruling on jurisdiction to make the decision. I certainly do not now make such a ruling, I can only hope that the Cost of Living Council and its subsidiary bodies handle the matters presented to them in a more expeditious way so as to avoid the unnecessary deleterious impact on the national economy which is caused by disputes such as the one at bar.

I must consider then the final argument of the Union that any injunction by this Court in this action would constitute a "prior restraint" on the exercise of free speech by the Union.

Because of the press of time, neither side thoroughly briefed or argued this point, nor can the factual presentation at the hearing be considered as full and complete. I am constrained, however, to consider and rule on the argument on this motion for a preliminary injunction. Before doing so, it is necessary to decide what test is to be used in determining whether a preliminary injunction will be granted.

There are some cases presented to the Court where the issues are fairly straightforward and can be resolved readily. In such situations, the test is whether the plaintiff has shown "a strong likelihood of ultimate success on the merits plus irreparable damage if the relief sought is not granted." Exxon Corp. v. City of New York, 480 F.2d 460 (2d Cir., 1973).

■ A different test applies, however, where, as in the instant case, there are presented to the Court "questions going to the merits so serious, substantial and difficult as to make them a fair ground for litigation and thus far more deliberate investigation." Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). Accord, Gulf & Western Indus., Inc. v. Great Atlantic & Pacific Tea Co., 476 F.2d 687 (2d Cir., 1973). In such a case, this Court must determine whether "the balance of hardships tips decidedly toward [the] plaintiff . . ." Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953). This is so since the District Court is forced by the Federal Rules of Civil Procedure to act most expeditiously while accomplishing the "basic purpose of a preliminary injunction . . . to maintain the status quo." Danielson v. Local 275 et al., 479 F.2d 1033 (2d Cir., 1973).

With that in mind, I find that the balance of hardships weighs heavily in favor of the plaintiffs. For every day of the strike each plaintiff will spend up to $50,000.00 in nonproductive payroll (not including supervisory and administrative personnel); contracts will be lost (and perhaps have already been lost) to the plaintiffs; and other forms of harm will necessarily befall them. The construction industry in the New York metropolitan area will be severely hampered since the plaintiffs are the major source of supply for ready-mix concrete.

In weighing the equities, the only detriment that will now be visited on the Union is that shop stewards will not be

free, for either part or all of the working days, to inspect job sites.

■ I find the argument raised by the Union, that any injunction issued by this Court to enforce the "no-strike" clause of the collective bargaining contract would be a "prior restraint" on the Union's constitutional right of free speech, to be without substance. Clearly not all picketing and strike activity is protected by the First Amendment. See, e. g., National Maritime Union of America, AFL–CIO v. N.L.R.B., 120 U. S.App.D.C. 299, 346 F.2d 411, 420, cert. denied, 382 U.S. 840, 86 S.Ct. 90, 15 L. Ed.2d 82 (1965).

If there be a prior restraint on the Union's strike activity, it will be caused not by this Court's action but by the Union freely entering into a collective bargaining contract and agreeing thereby to the "no strike" clause. In this regard, I find that this case closely parallels the decision of the Supreme Court in *Boys Markets*, referred to above.

There, as here, the parties had agreed to a "no-strike" clause; there, as here, the parties had agreed to let an independent third party resolve questions concerning the contract; there, as here, there had been a submission of the question to that independent third party.

The Union urges that the *Boys Markets* rationale must be restricted to cases involving arbitration and that the holding of the Supreme Court is posited on the strong national police favoring arbitration. 398 U.S. at 251–252, 90 S.Ct. 1583. I believe that there is an equally strong national policy favoring the resolution by the Cost of Living Council and its subsidiary bodies of questions such as that presented here.

Furthermore, the Union gave its "no-strike" pledge knowing that there were questions which were to be presented to the Cost of Living Council. The references in the contract to be "appropriate government agency" and to the CISC set out above are in the handwriting of the chief negotiator for the union.

For all the reasons set out above I will issue the preliminary injunction. This opinion constitutes findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

The issues presented by this action are far from easy to resolve. For that reason, the parties are directed (1) to notify the Cost of Living Council and its subsidiary committees of this decision; (2) to request and prepare for an expedited appeal to the Court of Appeals; and (3) to prepare for a full trial with thorough briefing so that a final decision may be reached as soon as possible.

So ordered.