474

**AIR PRODUCTS AND CHEMICALS, INC., and Stauffer Chemical Company, Plaintiffs,**

v.

**UNITED GAS PIPE LINE CO., Defendant.**

**Civ. A. No. 1896–73.**

United States District Court, District of Columbia, Civil Division.

April 2, 1974.

Peter J. Nickles, John A. Hodges, Covington & Burling, Washington, D. C., for plaintiffs.

W. DeVier Pierson, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

This action concerns alleged violations of price controls under Phase II of the President's Economic Stabilization Program (hereinafter "Phase II").[1] The case is now before the Court on plaintiffs' motion for partial summary judgment, defendant's cross-motion for summary judgment, and defendant's motion to dismiss. For reasons set forth *infra*, the Court finds that plaintiffs have failed to exhaust their administrative remedies and accordingly grants defendant's motion to dismiss for lack of subject matter jurisdiction.

The defendant United is a natural gas pipeline company subject to the jurisdiction of the Federal Power Commission. The present controversy involves increases in the price of its natural gas effective January 1, 1973. Plaintiffs Air Products and Chemicals, Inc. and Stauffer Chemical Company are customers of United and parties to 2 of its 55 contracts affected by the price increase. Plaintiffs claim that the increase was made in contravention of then applicable Phase II price controls.

Phase II of the Economic Stabilization Program and the Price Commission were established on October 16, 1971.[2] Both continued until January 10, 1973, when they were replaced by Phase III and the Cost of Living Council respectively.[3] On September 16, 1972, the Price Commission issued public utility regulations covering direct industrial gas sales of the type involved in the present case which, with minor subsequent amendments, continued in effect through the end of Phase II on January 10, 1973.[4] United contends that from September 16, 1972, to the end of Phase II on January 10, 1973, its direct industrial gas sales were subject to the requirements of the Price Commission's public utility regulations.

The primary issue in this case is whether United followed the proper procedure for effectuating its January 1, 1973 price increase. Under the Price Commission's September 16, 1972 public utility regulations, United, whose rates were not subject to the rate jurisdiction of a regulatory agency,[5] was confronted with two alternate procedures for increasing prices.[6] The applicability of one procedure over the other depended upon whether the price increase "would cause an increase of more than 1 percent in the aggregate annual revenues of a public utility which requested the increase."[7] Under the regulations, a public utility which stood to recognize an aggregate revenue increase in excess of one percent was required to prenotify the Price Commission 60 days in advance of the increase, while in the case of an increase not exceeding one percent, the public utility need only to have "self-certified" that the increase was justified and thereafter subject the increase to a 60 working day period of review by the Price Commission.[8]

The problem facing United was whether to aggregate the revenue in-

---

1. On October 15, 1971, the President issued Executive Order No. 11627, 36 Fed.Reg. 20139 (Oct. 16, 1971) which instituted Phase II pursuant to his authority under the Economic Stabilization Act of 1970, 12 U.S.C.A. § 1904 (Supp.1973) (note) (Supp. July 1973).

2. *Id.*

3. Executive Order No. 11695, 38 Fed.Reg. 1473 (Jan. 12, 1973).

4. These regulations appear at 6 C.F.R. §§ 300.301–300.311; they were promulgated at 37 Fed.Reg. 18893–18896 (Sept. 16, 1972).

5. The Federal Power Commission does not exercise rate jurisdiction over direct gas sales to industrial customers.

6. These alternate procedural requirements are set forth at 6 C.F.R. § 300.308(b) and (d).

7. See 6 C.F.R. § 300.308(b).

8. See note 6 *supra.*

crease from each of its 55 separate contracts for purposes of the "one percent test." If aggregation were not required by the regulations, the price increases to Air Products and Stauffer could be considered separately with the result that United could self-certify and avoid a 60 day prenotification period.

On November 6, 1972, Pennzoil Company on behalf of its wholly-owned subsidiary, United, made a written request to the Price Commission for guidance on how to apply the one percent test. On November 16, 1972, the Assistant General Counsel for the Price Commission responded that the one percent test should be applied on a contract by contract basis as opposed to an aggregate basis. United followed this decision and self-certified price increases on January 2, 1973, without prenotification to the Price Commission.

Plaintiffs object to a contract by contract application of the one percent test and instead contend that an aggregate approach should have been taken which would have necessitated prenotification to the Price Commission of the January increase.[9] Plaintiffs argue that, as a consequence of following an improper procedure, United's price increase was illegal and now pray for an injunction against the overcharge.

Jurisdiction is predicated upon 28 U.S.C. § 1331 and upon section 210(a) of the Economic Stabilization Act of 1970, 12 U.S.C.A. § 1904 (Supp.1973) (note), which provides in pertinent part:

"Any person suffering legal wrong because of any act or practice arising out of this title . . . may bring an action in a district court of the United States . . . ."

United contends in its motion to dismiss that § 210(a) of the Act is unavailable to plaintiffs since an initial agency ruling on the propriety of the January price increase has already been made.

It is United's position that in order to avoid a collateral attack through a private civil suit on an outstanding agency ruling, plaintiffs' only remedy is to bring a review proceeding against the Cost of Living Council under § 211 of the Act, 12 U.S.C.A. § 1904 (Supp.1973) (note). That section provides in part:

"(a) the district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title . . . ."

\* \* \* \* \* \*

(d) . . . no order of [any agency exercising authority under this title] shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence."

Notwithstanding the availability of § 211 as an alternate basis for jurisdiction, United contends that since plaintiffs have not exhausted their administrative remedy before the Cost of Living Council (hereinafter "CLC"), § 211 is presently unavailable.

The issues, therefore, before the Court are first, whether there has been initial agency action respecting the legality of United's price increase, and second, if an action has been taken, may plaintiffs still bring a private suit on the price increase under § 210(a) of the Act.

Disposing of the second issue first, the controlling authority is City of New York v. New York Telephone Co., 468 F.2d 1401 (T.E.C.A.1972). In that case the Temporary Emergency Court of Appeals ruled that where a rate increase was under active review by the Price Commission, the complainants should first submit their objections to the Commission for consideration and exhaust their administrative remedy before seeking court review in order to avoid "pre-

---

9. In the alternative, plaintiffs argue that the price increase was outside the special rules relating to public utilities (6 C.F.R. § 300.-308) and fell instead under the Price Com-mission's general rules for price increases, (6 C.F.R. §§ 300.309 and 300.51(a)) which would require prenotification in United's case.

mature interruption of the administrative process", as well as to encourage agency input in the "interpretation of its own regulations." *Id.* at 1402–1403. In McGuire Shaft & Tunnel Corp. v. Local Union No. 1791, 475 F.2d 1209 (T.E.C. A.1973), cert. denied, 412 U.S. 958, 93 S.Ct. 3008, 37 L.Ed.2d 1009 (1973), the Temporary Emergency Court of Appeals, in comparing sections 210(a) and 211, noted:

> "[Section 210(a)] clearly gives parties the right to obtain injunctive relief for harm suffered from violations of the act and implementing orders and regulations, *subject* only to the restrictions upon the district court's injunctive power provided in § 211 of the Act. *The restrictions in § 211 are directed at limiting the power of the judiciary to impede the enforcement, operation, or execution of the Economic Stabilization Program.*" *Id.* at 1213. (Footnote omitted.) (Emphasis added.)

■ Taking *New York Telephone* and *McGuire* together, it is plain that in cases where the propriety of a price increase has been submitted for review before the Price Commission, or its successor the CLC, and where that agency's procedures offer complainant an adequate administrative remedy, the court should stay its hand pending exhaustion of that remedy. To hold otherwise would be tantamount to sanctioning collateral attack on the administrative process in midstream as well as frustrating Congressional intent behind § 211. Society of the New York Hospital v. Associated Hospital Service of New York, 367 F.Supp. 149 (S.D.N.Y.1973); and Brennan Petroleum Products Co. v. Pasco Petroleum Co., 373 F.Supp. 1312 (D.Ariz.1974), CCH Energy Mgt. ¶ 9751, cited by plaintiffs, are inapposite to the issue at hand for in those cases review of the disputed transaction had not been submitted to the appropriate agency before commencement of the private suit.

Turning now to the question of whether the legality of the January increase had ever been before the Price Commission and the CLC for administrative determination, a brief review of transactions involving the matter will be helpful. Subsequent to the written opinion of the Assistant General Counsel for the Price Commission on November 16, 1972, Air Products filed a "complaint report" with the Internal Revenue Service on December 13, 1972, regarding United's proposed price increase. A copy was sent to the Price Commission. On January 2, 1973, representatives of Air Products met representatives of the Price Commission to discuss the increase. A second meeting was held on January 8, 1973, between representatives of both plaintiffs and the Price Commission.

On January 16, 1973, plaintiffs filed a twenty-seven page request for a ruling with the General Counsel for the CLC concerning United's price increase. The request sought a ruling in three areas, *viz.*, first, that price increases should be aggregated for purposes of applying the one percent test; second, that United's price increases are actually governed by regulations for service organizations under 6 C.F.R. § 300.51 which require prenotification; and third, if self-certification were appropriate under 6 C.F.R. § 300.308(d), then the CLC has the authority to suspend the increase under 6 C.F.R. § 300.-311(a)(2) pending further action. On January 18, 1973, counsel for United received notification from the CLC that it was in receipt of a filing from plaintiffs "protesting the rate increase for direct industrial sale of natural gas effective January 1, 1973."

On January 29 and February 1, 1973, Stauffer and Air Products respectively, filed formal complaints with the CLC requesting that the Council find United's increase illegal or in the alternative suspend the increase pending further agency action.

On May 18, 1973, the General Counsel for the CLC issued a written response to plaintiffs' January 16 ruling request which in substance declined to alter the interpretation given the one percent test

by the Assistant General Counsel to the Price Commission in his letter of November 16, 1972. The May 18 letter concluded:

"III. Section 300.311(a) gave the Price Commission discretionary power to limit, refuse, rescind or modify utility price increases. The Cost of Living Council has succeeded to the powers of the Price Commission. The Cost of Living Council declines at this time to exercise its discretionary power to revoke or suspend the price increases placed into effect pursuant to direct industrial sales contracts with the five companies requesting this ruling."

Plaintiffs argue that the May 18 letter is merely the opinion of the General Counsel for the CLC and not an order of the CLC validating United's price increase. As a consequence, plaintiffs contend that § 211(d)(1), which bans court injunctions of an agency "order" without benefit of final administrative review, is irrelevant to the jurisdictional argument as no CLC order exists for the court to enjoin.

■ The underlying theory to plaintiffs' argument is the belief that because agency review has not progressed to the point where court review is sanctioned by § 211, plaintiffs are free to avail themselves of a private redress under § 210(a). The infirmities with this position are obvious as it goes against the entire grain of *New York Telephone* and *McGuire* which sought to protect the administrative process against premature interruption from collateral attacks in private suits. In resolving any jurisdictional conflict between sections 210(a) and 211, the appropriate inquiry is not whether a final agency order has been made, but rather whether ongoing agency proceedings exist in which an adequate administrative remedy is availa-

ble to the complainant. If the latter case proves true, then upon final agency disposition, § 211 will necessarily operate to confer jurisdiction upon the court in conformity with traditional principles of the exhaustion doctrine.

The relevant agency regulations governing administrative review of the instant controversy are noted at 6 C.F.R. §§ 300.311, 305.38, and 305.50–75.[10] Section 305.75, which incorporates by reference § 305.38, provides that the "Commission [now the CLC] will reconsider its initial decision denying an initial action" and if the requested relief is denied, the Commission will state its reasons and issue an "appropriate order" from which judicial review may be sought. 6 C.F.R. § 305.38(b).

■■ The critical inquiry with respect to the present case is therefore whether the May 18 letter from the General Counsel for the CLC constituted denial of an "initial action" by the CLC. Section 300.311, which defines agency "actions" respecting a § 300.308 price increase, provides in part:

"(a) With respect to any price increase of a public utility covered by § 300.308 or § 300.310, and within any time limits specified in this subpart, the Price Commission may—

\* \* \* \* \* \*

(3) Limit, refuse, rescind, reduce or modify the increase."

The last paragraph of the May 18 letter makes reference to the authority of the CLC to take initial action under § 300.-311(a) and then concludes that the *"Cost of Living Council* declines" to "revoke or suspend the price increases . . . ." (Emphasis added.) In view of § 300.311(a)(3), it is clear that the May 18 letter constituted a denial of an initial action by the CLC. Accordingly, plaintiffs could have requested review

10. Although Phase II of the Economic Stabilization Program was terminated January 11, 1973, and the Price Commission with it, the Phase III CLC regulations in effect during the relevant portion of the instant controversy provide in part that:

"The procedures and remedies specified in chapter III of this title [6 C.F.R. § 300.-1–311.40] remain in effect with respect to all matters which were subject to that chapter before January 11, 1973." 6 C.F.R. § 130.7(a).

by the CLC of its denial under § 305.75 and ultimately had court review of any final order issued pursuant to § 305.75 (d). The fact that plaintiffs elected not to exhaust their administrative remedy is an insufficient reason for ignoring the jurisdictional mandate of § 211(a). To hold otherwise would be to act in contravention of the exhaustion doctrine as applied in *New York Telephone*.

Accordingly, the Court finds that plaintiffs have not exhausted an available and adequate administrative remedy before the Cost of Living Council. Defendant's motion to dismiss for lack of jurisdiction is granted.