**AIR PRODUCTS AND CHEMICALS, INC., and Stauffer Chemical Company, Plaintiffs-Appellants,**

v.

**UNITED GAS PIPE LINE COMPANY, Defendant-Appellee.**

**ALLIED PAPER INCORPORATED, Plaintiff-Appellant,**

v.

**UNITED GAS PIPE LINE COMPANY, Defendant-Appellee.**

**Nos. DC–23, DC–25.**

Temporary Emergency Court of Appeals, Argued June 28, 1974.

Decided Sept. 3, 1974.

Rehearing Denied Oct. 7, 1974.

Peter J. Nickles, Covington & Burling, Washington, D. C. (John A. Hodges, John D. Taurman, Washington, D. C., on the brief), for appellants, Air Products and Chemicals, Inc., and others.

S. White Rhyne, Jr., Mullin, Connor & Rhyne, Washington, D. C. (Arthur A. Munisteri, New York City, on the brief), for appellant, Allied Paper Inc.

W. DeVier Pierson, Sharon, Pierson, Semmes, Crolius & Finley, Washington, D. C. (William B. Cassin, Houston, Tex., on the brief), for appellee.

Before HASTIE, CHRISTENSEN and ESTES, Judges.

PER CURIAM:

Contract purchasers of natural gas have taken these consolidated appeals under Section 211 of the Economic Stabilization Act of 1970, as amended (the Act), 12 U.S.C. § 1904 note (1972 Supp.), from orders dismissing their complaints, 373 F.Supp. 474. The actions had been brought in the district court as private suits under section 210 of the Act against the plaintiffs' supplier, United Gas Pipe Line Company (United), to recover allegedly unlawful overcharges.

Effective January 1, 1973 United imposed upon 55 of its industrial contract customers, among them the appellants, large direct increases in the price of gas. Before doing so and unknown to its customers, United , through informal direct communication, had obtained a letter, dated November 16, 1972 and signed by Assistant General Counsel of the Price Commission upon the basis of which United concluded that under a regulation of the Price Commission, 6 C.F.R. § 300.308, it might properly "self-certify" its proposed increases and put them into effect without prior Commission approval, albeit subject to subsequent review and possible invalidation.

As customers who had not been heard before the price increases became effective, the appellants then made formal submissions to the Cost of Living Council (CLC), to which the powers and responsibilities of the Price Commission had been transferred, seeking a ruling that the price increases were unlawful. Thereafter, without explicitly addressing the merits of appellants' contention, a letter signed by CLC General Counsel informed them that CLC declined "at this time" to intervene. Thus frustrated, the appellants filed the present suits.

Both actions were dismissed on the ground that, as private actions for relief under section 210 of the Act, they were premature. Failure to join the Cost of Living Council as an indispensable party was stated as an additional reason for dismissing the complaint of Allied Paper, Inc.

■ At the outset, we hold that failure to join CLC as a party did not in itself justify dismissal of the action. "If a party has been omitted who ought to be joined under Rule 19, the remedy is to join him, and dismissal is called for only if he cannot be served or his presence would destroy diversity." C. Wright, Federal Courts, 2d ed., 306. Yet, we have no doubt that CLC should have been made a party to the actions below. Under all the circumstances reflected in this record and discussed later in this opinion, including many communications between individual parties and agency officials, we hold that the appropriate agency or officer of the United States should be made a party to the actions below so that the positions and views of those who administered the Act in connection with this controversy can be fully presented. *Cf.* Associated General Contractors of America, Inc. v. Laborers Int'l. Union, Em.App., 1973, 476 F.2d 1388.

■ This brings us to the major question, whether the appellants' invocation of the remedy provided by section 210 of the Act was premature.

First, it is argued that, after being informed by General Counsel that CLC declined "at this time", to interdict the price increases which had occasioned customer complaints, appellants should have asked for administrative reconsideration before suing United. The short answer is that the agency itself says that its practice and regulations do not provide for any such reconsideration at the request of a complainant purchaser in the situation of the appellants.

Allied's counsel made several attempts to learn from General Counsel for CLC whether any further administrative remedies were available in this case. An affidavit of Allied's counsel states that he was told that CLC intended to take no further action and that there were no administrative remedies remaining to Allied. On April 29, 1974, Allied received a letter from CLC General Counsel affirming the position stated earlier. The letter reads in part:

It is the Council's position that under the Economic Stabilization Act and the Phase II regulations Allied had no further administrative remedies. There is no requirement in the regulations that a consumer complainant seek reconsideration of the Commission's or Council's refusal to act on a complaint submitted pursuant to 6 CFR 300.506. Nor do the regulations provide a procedure for reconsideration of the Commission's or Council's

unpublished determination of issues in response to a request for a ruling. The General Counsel's letter of May 18, 1973 did not constitute "initial action" as that term is defined in 6 CFR Part 305 and, consequently, did not require a request for reconsideration in order for Allied to exhaust its administrative remedies.

In Baldwin County Electric Membership Corp. v. Price Commission, Em. App., 1973, 481 F.2d 920, cert. denied, 414 U.S. 909, 94 S.Ct. 230, 38 L.Ed.2d 147, customers of a utility challenged the validity of the Price Commission's approval of their supplier's rate increase. The utility intervened in the district court and contended that the customers' actions should be dismissed for failure to seek administrative reconsideration of the customers' complaints. However, the Price Commission denied that reconsideration was available. Neither the district court nor this court in its opinion specifically mentioned this issue. However, both courts implicitly rejected the utility's contention by upholding the Price Commission on the merits rather than disposing of the case on the motion to dismiss.

■ In our view, the "availability" of further admininstrative proceedings is a practical matter. When an agency itself has explicitly represented that reconsideration is not available after a certain type of ruling, and its regulations are not clearly to the contrary, resort to an otherwise available judicial remedy should not be precluded for failure to exhaust administrative remedies.

■ As a separate contention in support of the claim that these actions under section 210 are premature, it is argued that the appellants should first have sought, under section 211, judicial review of CLC's unwillingness to suspend or revoke the price increases at this time. But this argument confuses the nature and functions of a section

210 private action with direct judicial review of agency action under section 211. The latter provides a judicial remedy for plaintiffs subject to price controls who have a complaint against the enforcing agency—e. g., that the agency has entered an order refusing to allow a seller to increase prices—or for other plaintiffs who have been aggrieved by formal decisions or orders that denied administrative relief to which they believe they were entitled under the Act and implementing regulations. In this case CLC has not promulgated any decision or issued any order that could be reviewed under that section.[1] In contrast, section 210 provides a judicial remedy for plaintiffs who have a complaint against a private party, usually a seller, who the plaintiff contends has injured him through a violation of the Act or regulations. Resort to section 210 is appropriate here, because the matter in dispute is not the validity of an agency's orders, but rather is the question of whether United, a private party, has increased its prices in violation of the regulations while CLC has stood by, declining to intervene. Plaintiffs, therefore, were entitled to bring this section 210 action against their seller to test the validity of its actions. Cf. McGuire Shaft & Tunnel Corp. v. Local 1791, U.M.W., Em.App., 1973, 475 F.2d 1209, cert. denied, 412 U.S. 958, 93 S.Ct. 3008, 37 L. Ed.2d 1009.

■ Upon remand the district courts will have to determine whether the price increase in controversy was lawful. Admittedly, United put its price increase into effect by a "self-certification" procedure that was allowable under the Phase II Public Utility regulations of the Price Commission only if the proposed action would not increase the seller's annual revenue by more than one percent. 6 C.F.R. § 300.308(d). If the similar increases imposed on all 55 of United's direct industrial customers are

---

1. In the above quoted letter of April 29, 1974, CLC General Counsel explicitly stated that the agency had not "review[ed] the

merits of the United Gas Price increase . . . . ."

**1064**

aggregated, they increased United's annual revenue by more than one percent. If not, no one customer's increase was that large. Therefore, there must be judicial determination whether proper application of subsection 300.308(d) required aggregation in the circumstances of these increases.[2]

The regulations, on their face, seem not to provide a clear and unequivocal answer to this question. In answering it the district courts will properly give weight to any rational administrative analysis and interpretation that may be presented.[3]

Finally, if on remand no merit shall be found in the plaintiffs' other contentions, the trial courts will be confronted by the contention that the price increases in controversy lacked such cost-justification as was required by 6 C.F.R. § 300.303(a). Although the customer complaints brought this question before the Cost of Living Council, the present record discloses no agency adjudication of its merits. Rather, General Counsel, himself not a delegatee of adjudicatory power, merely notified the complaining customers that the Cost of Living Coun-

cil, "declines at this time to exercise its discretionary power to revoke or suspend the price increases . . . ." This Delphic pronouncement leaves it unclear whether, and if so by whom, the increases were thought to be supported by adequate cost justification, or whether it was decided by someone for some reason not to consider this issue. In any event, the district courts may find it necessary to decide, aided by any expression and explanation of administrative views that shall be tendered, whether the increases were adequately justified as required by 6 C.F.R. § 300.303.

We cannot predict the precise course that hearings on the merits of the complaints will take. It is not our purpose here to restrict the trial courts in their exercise of judgment and proper discretion in the conduct of trial. We merely point out the context in which major issues may have to be decided.

The dismissal orders are vacated and the cases remanded for appropriate proceedings on the merits after the United States or the appropriate federal officer or agency shall have been joined as a party.

2. The legal conclusions stated by Assistant General Counsel in his letter of November 16, 1972, to United cannot suffice to establish their own correctness without a showing of their basis and rationale sufficient to demonstrate that they reflect a reasonable application of relevant law and regulations to the circumstances of these price increases.

3. The appellants have argued that aggregation and prenotification were required because that procedure was under these circumstances clearly called for by the underlying policy of the prenotification provision. Moreover, a recent ruling of the General

Counsel of the Internal Revenue Service, concurred in by the General Counsel of Price Commission (Price Commission Ruling 1972–292, 39 Fed.Reg. 28604), had required customer aggregation in an analogous situation. They attach little significance to what United views as a controlling November 16, 1972 letter to United from the Price Commission Assistant General Counsel stating that aggregation was not required because, they say, "there is no indication that the Assistant General Counsel was made aware of the fact that the contracts involved were substantially identical, that substantially identical price increases aggregating about $50 million were sought".