**STATE OF MINNESOTA, by its Attorney General Warren SPANNAUS, and State of New York by its Attorney General, Robert Abrams, and its Energy Commissioner James L. Larocca, Plaintiffs,**

v.

**STANDARD OIL COMPANY (INDIANA), United States Department of Energy, James S. Edwards, Secretary, United States Department of Energy, Avrom Landesman, Acting Special Counsel for Compliance, Office of the Special Counsel, Department of Energy, Defendants.**

Civ. No. 4–80–461.

United States District Court,
D. Minnesota,
Fourth Division.

June 18, 1981.

---

Warren R. Spannaus, Atty. Gen., Jerome L. Getz, Deputy Atty. Gen., William P. Marshall, and Brad P. Engdahl, Sp. Asst. Attys. Gen., St. Paul, Minn., for plaintiff State of Minnesota.

Robert Abrams, Atty. Gen., Melvin P. Leventhal, Paulann M. Caplovitz, and Kenneth Robinson, Asst. Attys. Gen., New York City, for plaintiff State of New York.

Dale I. Larson, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., Thomas A. Gottschalk, Stephen A. Herman, David G. Norrell, and Glenn Summers, Kirkland & Ellis, Washington, D.C., and M. J. Keating, Chicago, Ill., for defendant Standard Oil Company (Indiana).

Frank W. Krogh, Barry J. Sheingold, Janet M. Richmond, and Janice Alperin, U.S. Dept. of Energy, Washington, D. C., for federal defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

On September 5, 1980, plaintiffs State of Minnesota and State of New York (States) filed in this Court a four count complaint. The complaint alleges that defendant Standard Oil Company of Indiana (Standard) failed to comply with the federal petroleum price and allocation regulations, thereby overcharging the plaintiffs for petroleum products. The complaint also alleges that Standard and the Department of Energy (DOE) entered into an unlawful consent order. The challenged consent order purports to resolve all claims or disputes between Standard and the DOE for the period of March 6, 1973, through December 31, 1979. The matter is now before the Court on motions by Standard and the DOE to dismiss Counts II, III, and IV of the complaint, the three counts that challenge the validity of the Consent Order. For the reasons stated herein, the motions are granted.

FACTS

The facts relevant to these motions are not complex. Basically, these motions require an analysis of the legal effect of two documents—the Standard Oil Consent Order and the complaint.

The DOE has been charged by Congress with the duty to enforce the federal petroleum price and allocation regulations. As part of the enforcement program, the DOE began an audit of Standard's compliance with the regulations. The period covered by the audit begins in 1973. During the course of the audit, the DOE took numerous administrative actions, including the issuance of notices of probable violations, the issuance of one proposed remedial order, and the filing of a lawsuit. Standard and the DOE entered into settlement negotiations, and in early 1980 a settlement of all enforcement disputes arising out of the audit was finalized with the issuance of a Consent Order. The Consent Order "settles and finally resolves all claims and disputes against Standard by DOE for the period of March 6, 1973, through December 31, 1979 . . . ." (Consent Order ¶ 101.)

In Count I of the complaint, the States allege that they have purchased petroleum products from Standard and that, upon information and belief, Standard has failed to comply with the applicable price and allocation regulations, thereby overcharging Minnesota and New York. This count is not included in the present motions to dismiss.

In Count II the States aver that the DOE regulations at 10 C.F.R. § 210.92(a) require

each firm subject to the petroleum price and allocation regulations to maintain and preserve records sufficient to demonstrate that the firm is in compliance with such regulations. The States also aver that paragraph 411 of the Consent Order [1] relieves Standard of its obligation to comply with the record-keeping requirements of the Federal petroleum price and allocation regulations for the period covered by the Consent Order. The States allege that this clause of the Consent Order permits Standard to destroy the records it has relating to the time period covered by the Consent Order and that the States need these records in order to demonstrate injury in the private action under Count I. The States allege that this clause of the Consent Order is in excess of the DOE's statutory authority, in violation of the DOE's regulations, an infringement on the plaintiffs' private right of action against Standard, and constitutes arbitrary and capricious action. On the day the plaintiffs filed their complaint, they obtained a temporary order from the United States Magistrate prohibiting the destruction of documents maintained by Standard pursuant to 10 C.F.R. § 210.92 pending a hearing on a preliminary injunction. On September 17, 1980, the parties entered into a stipulation superseding the Order of the United States Magistrate. In the stipulation, Standard agreed that it would maintain for the duration of this lawsuit all records it had accumulated in connection with the petroleum regulations.

In Count III of the complaint, the plaintiffs aver that in paragraph 409 of the Consent Order,[2] the DOE "agreed in advance not to participate voluntarily in a manner that would be adverse to Standard in any administrative or judicial proceeding relating to Standard's compliance with the applicable petroleum price and allocation regulations during the period covered by the Consent Order." Complaint ¶ 41. The plaintiffs also aver that in paragraph 412 of the Consent Order,[3] the DOE agreed in

1. Paragraph 411 of the Consent Order provides:
 Beginning not more than thirty (30) days after this Consent Order becomes effective, and each ninety (90) days thereafter until Standard has substantially complied with this Consent Order, Standard shall submit to DOE a report of its actions pursuant to the terms of the Consent Order. Standard agrees to maintain such records as are necessary to demonstrate compliance with the terms of this Consent Order. As to any other records, Standard is relieved of its obligation to comply with the record-keeping requirements of 10 C.F.R. § 210.92, or other record-keeping requirements of the Federal petroleum price and allocation requirements for the period covered by this Consent Order. Standard will not hereafter be subject to any report orders, subpoenas, or other administrative discovery relating to the period covered by this Consent Order. This Consent Order does not relieve Standard of its obligation to comply with 10 C.F.R. § 210.92 with respect to records for periods after December 31, 1979, or with respect to records supporting Standard's May 1973 base costs.

2. Paragraph 409 of the Consent Order provides:
 Compliance by Standard with this Consent Order shall constitute full compliance with all federal petroleum price and allocation requirements for the period covered by this Consent Order. Except as provided in Paragraph 415(b) below, DOE hereby releases completely all administrative and judicial claims, demands, liabilities, causes of action or other proceedings that it has asserted or may be able to assert against Standard arising, before or after the date hereof, out of any federal petroleum price or allocation requirement for the period covered by this Consent Order. DOE will not initiate or prosecute any such matter or cause or refer any such matter to be initiated or prosecuted, nor will OSC, or any successor, directly or indirectly aid in the initiation or prosecution of any such matter. DOE will not voluntarily participate adversely to Standard in any administrative or judicial proceeding related to Standard's compliance with the federal petroleum price and allocation requirements for the period covered by this Consent Order. DOE has determined that it is not appropriate to seek to impose civil or criminal penalties for the period covered by this Consent Order, and DOE expressly agrees that it will not seek any such civil or criminal penalties.

3. Paragraph 412 of the Consent Order provides:
 DOE will treat the commercial and financial information provided by Standard pursuant to this Consent Order, as well as all other information in the possession of DOE regarding Standard and related to the matters covered by this Consent Order, as confidential and proprietary, and will not disclose such information unless required to do so by law. If a request or demand for release of any such information is made pursuant to law,

advance to claim every exemption or privilege permitted by law to preclude release of information relating to Standard's compliance with the petroleum regulations. The plaintiffs allege that these two paragraphs of the Consent Order exceed the DOE's statutory authority, violate the DOE's regulations, is contrary to law, and constitute arbitrary and capricious action and an abuse of discretion.

Count IV is somewhat broader than Counts II and III in that it attacks the entire Consent Order rather than specific portions of it. In Count IV, the plaintiffs set forth four ways in which they believe that the DOE exceeded its authority and abused its discretion by issuing the Consent Order. First, the plaintiffs allege upon information and belief that the DOE has not audited Standard beyond December of 1976. The plaintiffs allege that the DOE is not authorized or permitted to settle compliance matters for periods that have not been audited. Second, the plaintiffs allege that under 10 C.F.R. § 205.199J(a), the DOE may issue a consent order to "resolve an outstanding compliance investigation or proceeding," and that the DOE exceeded its authority by resolving not only pending proceedings but also all potential proceedings arising from the period of time covered by the Standard Oil Consent Order. Third, the plaintiffs argue that 10 C.F.R. § 205.-119J(a) requires that consent orders set forth the relevant facts that form the basis for the order. The plaintiffs argue that the Standard Oil Consent Order is defective in that it fails to set forth a sufficient factual basis. Finally, the plaintiffs argue that the DOE has used remedies in the Consent Order that are not permitted under the applicable law. They assert that the only permissible remedy for violation of the pricing regulations is restitution, and that most payments by Standard will be for purposes other than restitution. The plaintiffs assert that these four features demonstrate that, in entering into the Consent Order, the DOE acted in excess of its statutory

and regulatory authority and in a manner that was contrary to law, arbitrary, capricious, and an abuse of discretion.

The defendants have moved to dismiss Counts II, III, and IV. The defendants contend that the Consent Order is not subject to judicial review because it is committed to agency discretion by law, and also that the plaintiffs lack standing to challenge the Consent Order.

DISCUSSION

■ Congress created a dual mechanism for enforcement of the petroleum price and allocation regulations: a private right of action and administrative enforcement by the applicable agency. The private right of action is based on section 210 of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 (note), as incorporated by reference in the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 754(a)(1) and the Department of Energy Organization Act (DOE Act), 42 U.S.C. § 7192(a). Section 210 provides:

(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

Count I of the plaintiffs' complaint is brought under section 210. The DOE is the administrative agency designated to enforce the regulations for the· federal government. ESA § 209, 12 U.S.C. § 1904 (note); DOE Act §§ 201, 301, 503, 42 U.S.C. §§ 7131, 7151, 7193. While the private right of action aims at punishing violators and compensating victims, the purpose of the administrative remedy is to insure compliance with the regulations on a national scale. *Bulzan v. Atlantic Richfield Co.*, 620 F.2d 278, 282 (Temp.Emer.Ct.App.1980).

---

DOE will claim any privilege or exemption reasonably available to it. Unless prohibited from doing so by law, DOE will provide Standard with not less than ten (10) days actual notice in advance of any intended disclosure of such information.

■ Section 211 of the ESA provides detailed procedures for judicial review of agency action. Subsection (a) provides:

The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy . . . .

Subsection (b) establishes the Temporary Emergency Court of Appeals (TECA) to hear appeals from the district courts in cases arising under the ESA, and subsection (c) provides for certification of constitutional issues to TECA. Subsection (d)(1) of section 211 provides:

Subject to paragraph (2) . . . no *order* of [any agency exercising authority under this title] shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is *in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence.*

(Emphasis added.) Paragraph (2) of subsection (d) permits a district court to enjoin "the application of a particular regulation or order issued . . . to a person who is a party to litigation before it." Subsection 211(e)(1) provides:

*Except as provided in subsection (d) of* this section, *no interlocutory or permanent injunction restraining the* enforcement, operation, or *execution of* this title, or *any* regulation or *order issued thereunder, shall be granted by any district court of the United States or judge thereof. Any such court shall have jurisdiction to declare* (A) that a regulation of an agency exercising authority under this title is in excess of the agency's authority, is arbitrary or capricious, or is otherwise unlawful under the criteria set forth in section 706(2) of title 5, United States Code [section 706(2) of Title 5], or (B) *that an order of such agency is invalid upon a determination that the order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence.*

(Emphasis added.) Subsection 211(e)(2) permits the party aggrieved by such a declaration by a district court to appeal the declaration *to TECA within 30 days.* It also provides that "any party believing himself entitled by reason of such declaration to a permanent injunction restraining the . . . execution of such . . . order may file, within the same thirty-day period, a motion in the Temporary Emergency Court of Appeals requesting such injunctive relief." Thus it is clear that district courts may review and declare the lawfulness of orders issued by the DOE, but that only TECA may *restrain such orders.*

In Counts II–IV of the complaint, the plaintiffs seek judicial review of a consent order issued by the DOE. By alleging that an executive agency acted in excess of its authority, the plaintiffs are bringing an action against the United States. Therefore, section 211 is the relevant statutory basis. *McCulloch Gas Processing Corp. v. Canadian Hidrogas Resources, Ltd.,* 577 F.2d 712, 718 n. 13 (Temp.Emer.Ct.App.), *cert. denied,* 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126 (1978). The question here is whether the language of subsections 211(d) and (e) is broad enough to permit judicial review of consent orders.

■ The defendants take the position that the DOE's power to negotiate and enter into consent orders is committed to agency discretion by law and therefore the Standard Oil Consent Order is completely shielded from judicial review by 5 U.S.C. § 701(a)(2). To establish that consent orders are exempt from judicial review, the defendants must demonstrate that "Congress has in express or implied terms precluded judicial review or committed the challenged action entirely to administrative discretion." *Barlow v. Collins,* 397 U.S. 159, 165, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970). The problem with the defendant's argument is that the language of section 211 covers any "order" by the agency without differentiation by type of order. The DOE's regulation permitting it to issue consent orders provides:

(b) A Consent Order is a final Order of the DOE having the same force and effect as a Remedial Order issued pursuant to § 205.199B or an Order of Disallowance issued pursuant to § 205.199E, and may require one or more of the remedies authorized by § 205.199I and § 212.-84(d)(3).

10 C.F.R. § 205.199J. Hence, rather than excluding judicial review, the plain language of section 211 permits judicial review of the terms of a consent order.

Although this Court may review the Standard Oil Consent Order, the scope of its review is very narrow. Unlike agency *regulations*, which may be declared to be (1) in excess of agency authority, (2) arbitrary and capricious, or (3) unlawful under the criteria set forth in the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 706(2), agency *orders* may only be declared to be (1) in excess of the agency's authority, or (2) based upon findings not supported by substantial evidence. This difference in the scope of review between regulations and orders indicates that Congress intended the agency to have very broad, but not unlimited, discretion in issuing orders. Moreover, the second basis for review of orders is not applicable to consent orders because consent orders are generally entered into before evidence is presented in a hearing. Therefore there are no findings

in any record that a court can review. Thus, the Court's inquiry in the review of consent orders is limited to determining whether the DOE has traversed a limitation on its authority.

■■ The defendants opine that finding consent orders to be subject to judicial review will interfere with the agency's exercise of its prosecutorial discretion. The Court wishes to emphasize that its ruling that consent orders are subject to judicial review under subsection 211(e)(1) will not in any way hamper the legitimate prosecutorial discretion of the DOE. Subsection 211(e)(1) does not permit a court to review such actions as the agency's decision not to prosecute an alleged violator of the regulations the timing of the agency's prosecutions, or the formulation of an enforcement policy because none of these decisions involve an "order" of the agency.[4] *See Air Products and Chemicals, Inc. v. United Gas Pipeline Co.,* 503 F.2d 1060, 1063 (Temp. Emer.Ct.App.1974) (Section 211 does not provide relief when the agency "has not promulgated any decision or issued any order that could be reviewed under that section.") What section 211 permits a court to do is scrutinize those agency actions that have a binding legal effect on the parties to the action to ensure that the action contains no substantive or procedural illegalities.[5]

4. This Court's ruling that subsection 211(e)(1) permits judicial review of the terms of consent orders is in agreement with the rulings in *Go-Tane Service Stations, Inc. v. DOE,* No. 81–C–945 (N.D.Ill. filed April 10, 1981) and *U. S. Oil Co., Inc. v. DOE,* 510 F.Supp. 910, (E.D.Wis. 1981). These cases each involved motions for preliminary injunctions to prevent the DOE from entering consent orders. In *Go–Tane,* the court ruled that the decision to enter into a consent order is committed to agency discretion. In *U. S. Oil Co.,* the court ruled, in an alternative holding, that "the entering of a consent order is a decision left to the discretion of the DOE." Slip op. at 10. The instant case is distinguished from these decisions in that the plaintiffs here are not seeking to prevent the DOE from entering into a consent order, but rather are claiming that the terms of a consent order exceed the authority of the DOE. Thus, while the DOE's prosecutorial discretion necessarily includes the sole power to decide whether to continue to prosecute or to settle a case,

the prosecutorial discretion is circumscribed by subsection 211(e)(1) when the DOE decides to settle a case by entering a consent order. The terms of the consent order must not be "in excess of the agency's authority."

5. The two cases upon which the defendants primarily rely in arguing that DOE consent orders are entirely shielded from judicial review are not persuasive on this point.

The first case, *Kixmiller v. SEC,* 492 F.2d 641 (D.C. Cir. 1974), involved the reviewability of an informal letter opinion issued by the staff of the SEC stating that the staff would not recommend that enforcement action be taken by the Commission. The court of appeals held that the informal letter opinion was not an "order" of the Commission and therefore did not fall within the statute which provided for judicial review of "an order issued by the Commission." In dictum, the court stated that even if a refusal to take enforcement action could be considered to be an "order," such a decision is

In this case, it is beyond cavil that the DOE could not in the Standard Oil Consent Order permit Standard to do an act that is patently illegal. What section 211 does is permit this Court to review the Consent Order to determine whether it contains such provisions.

■ In scrutinizing the Consent Order on a motion to dismiss, the Court must determine whether "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). All well-pleaded facts in the complaint as well as all inferences which may be drawn from the facts are accepted as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973); *Park View Heights Corp. v. City of Black Jack*, 467 F.2d 1208 (8th Cir. 1972). However, unsupported conclusions of law or of mixed fact and law are not admitted as true. *Stanton v. United States*, 434 F.2d 1273, 1276 (5th Cir. 1970); *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97 (5th Cir. 1974). The Court is not required to accept as true a plaintiff's allegations of the legal effect of a document attached to the complaint as an exhibit, as is the Consent Order in this case. *Droppleman v. Horsley*, 372 F.2d 249, 250

(10th Cir. 1967). Thus, it is insufficient for the plaintiffs here to allege that the Standard Oil Consent Order is arbitrary and unlawful. They must at least point out some way that the Consent Order appears to exceed the DOE's authority and allege facts that support the theory.

■ In Count II, the States allege that paragraph 411 of the Consent Order, which relieves Standard of the requirement that it preserve and maintain records for the DOE, is in excess of the DOE's authority. The record keeping requirements established at 10 C.F.R. § 210.92 were promulgated pursuant to Congress' grant of authority to the DOE (and its predecessor, the FEA) to "require, by rule, the keeping of such accounts or records as [the Administrator] determines are necessary or appropriate for determining compliance." 15 U.S.C. § 772(g). Based on this grant of authority, the DOE has provided by rule that records of certain kinds of information must be maintained for agency inspection. 10 C.F.R. § 210.92. Although these records may be discoverable by private plaintiffs in actions under section 210 of the ESA, the DOE need not require that records be maintained for the benefit of section 210 plaintiffs, and it has not done so in 10 C.F.R. § 210.92. Indeed, in 10 C.F.R. § 210.92(d)(2) the DOE has provided that upon completion of an audit

not reviewable because the SEC has been vested by Congress with broad prosecutorial discretion. This Court's holding today is perfectly harmonious with *Kixmiller v. SEC*. Like the SEC, the DOE has broad discretion in deciding how it should investigate, prosecute and enforce the regulation. But when it takes actions that are final and binding as are consent orders, then these actions are reviewable to the extent permitted by Congress in section 211.

The second case relied upon by the defendants is *Local 282, International Brotherhood of Teamsters v. N.L.R.B.*, 339 F.2d 795 (2d Cir. 1964). This case involved the prosecutorial power of the General Counsel of the NLRB. In *Local 282 v. N.L.R.B.* the court wrote:

[The NLRB General Counsel's] statutory authority "in respect of the prosecution of such complaints before the Board" must include the power to determine whether a complaint can be successfully prosecuted and, if he thinks not, to drop it; by the same token he has power to consider and decide whether the public interest would be better served by

settlement, *although if the settlement calls for an order, the Board, like a court presented with a consent decree, is not required to enter it*. The policy of the Act . . . requires that the Board be recognized as empowered to determine when the possibly slight merit of a charge is outweighed by the sure and speedy concessions, the industrial harmony restored, and the saving of Board resources which a settlement can achieve.

339 F.2d at 799 (emphasis added). This case does not stand for the broad proposition asserted by the defendants that consent orders are completely shielded from judicial review. On the contrary, it recognizes the important distinction between an agency's decision on whether to settle an enforcement proceeding, and whether a court is bound to recognize and accept the terms contained in a consent order. Just as a court is not bound to enter a consent decree that contains illegal provisions, it is likewise authorized by section 211 to review consent orders to determine whether the order contains any illegal provisions.

the agency may, in its discretion, relieve a firm of the record maintenance requirements. Hence, paragraph 411 of the Consent Order is not in excess of the agency's authority.[6]

 In Count III, the States allege that the DOE's agreements in paragraph 409 of the Consent Order not to voluntarily participate adversely to Standard in proceedings relating to matters dealt with by the Consent Order and in paragraph 412 of the Consent Order to claim every exemption or privilege permitted by law to preclude release of information relating to Standard's compliance with the petroleum regulations are in excess of the agency's authority. The thrust of the States' allegation is that section 210 of the ESA "contemplates that the DOE will provide necessary information and assistance" to private litigants, Complaint ¶ 40, and that these provisions contravene this "contemplation" of section 210. It is unnecessary on this motion to delineate the full extent of the role the DOE plays in private enforcement actions under section 210. It is sufficient to note that section 210 does not mandate agency participation in private actions. Although a court may require joinder of the DOE in a private action, *Longview Refining Co. v. Shore*, 554 F.2d 1006 (Temp.Emer. Ct.App.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977), it is not required to do so in every case, *Dyke v. Gulf Oil Corp.*, 601 F.2d 557 (Temp.Emer.Ct.App. 1979). Paragraph 409 of the Consent Order does not change the agency's role in private actions in any way. It does not have the legal effect of restricting the aid that the agency may provide to the Court in private actions against Standard. What it does is expressly state what is implicit in any administrative settlement—that the Consent Order is the final resolution of the differences between the agency and Standard and the agency will not seek to resurrect the differences under the guise of private litigation. The modifier "voluntarily," however, clearly leaves open the potential for participation by the DOE in this private action brought by the States against Standard as may be directed by the Court. Moreover, the DOE could not, by an agreement with an oil company, limit the power of a court to enlist the aid of the agency to assist the Court in a section 210 action. *See Dyke v. Gulf Oil Corp.*, 601 F.2d at 569 & n. 39. In much the same way, paragraph 412 of the Consent Order does not exceed the agency's authority. In open court, the defendants represented to this Court that paragraph 412 does not permit the DOE to withhold any information that is otherwise obtainable through discovery or does not fall within the discretionary exemptions to the Freedom of Information Act. (See Tr. at 54–60.) It is the conclusion of this Court that the legal effect of these two paragraphs does not exceed the agency's authority.

Finally, in Count IV, the States allege that the Consent Order exceeds the agency's authority in several ways.[7]

First, they allege that the DOE has not completed the audit of Standard, but point out no requirement that the DOE complete audits prior to terminating its compliance investigation.

---

**6.** Moreover, Standard and the States have entered into a stipulation whereby Standard agreed to continue to maintain the records required by 10 C.F.R. § 210.92 or other record keeping requirements of the applicable petroleum price and allocation regulations accumulated in connection with the claims contained in the complaint. This stipulation appears to eliminate the injury alleged in Count II of the complaint, thereby rendering that count moot. *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

**7.** At the oral arguments, counsel for the State of Minnesota asserted that the only practical effect the Consent Order has on Standard is requiring Standard to pay $100 million. The State alleges that the Consent Order is a token, political settlement in view of the potential amount of overcharges, which the State characterized as amounting to billions of dollars. Whether or not these allegations are true or whether they can be proven is not before this Court because section 211 does not permit the Court to evaluate the wisdom (or lack of wisdom) of the provisions of a consent order. The scope of review is limited to determining whether the agency had the authority to include such a provision.

■ Second, they complain that the Consent Order resolves potential enforcement actions arising out of the time period covered by the Consent Order as well as pending enforcement actions. However, the DOE's authority to issue Consent Orders permits the agency to "at any time resolve an outstanding *investigation or* proceeding." 10 C.F.R. § 205.199J(a). This provision is broad enough to permit the agency to terminate its investigation of Standard with a Consent Order, and, therefore, the DOE has not acted in excess of its authority.

■ Third, the States allege that the Consent Order fails to set forth the relevant facts which form its basis and that it therefore fails to fulfill the requirements of 10 C.F.R. § 205.199J(a). It must be noted that consent orders of necessity contain fewer factual findings than remedial orders because consent orders are generally entered into prior to any hearing on the record. This fact is reflected by section 205.199J(a), which provides that consent orders need not constitute an admission by the person to whom it is issued that the regulations have been violated, nor a finding by the DOE that the person violated the regulations. It need only "set forth the relevant facts which form the basis for the [consent] Order." *Compare* 10 C.F.R. § 205.199J(a) *with* 10 C.F.R. § 205.192 ("The Proposed Remedial Order shall set forth the proposed findings of fact and conclusions of law upon which it is based.") *and* 10 C.F.R. § 205.-199B (determinations by Office of Hearings and Appeals regarding Proposed Remedial Orders "shall state the relevant facts and legal bases supporting the determination"). Paragraphs 301 to 306 of the Standard Oil Consent Order set forth the "Factual Background And Regulatory Considerations" that form the basis of the Consent Order, including the subject areas audited, the applicable statutory and regulatory authorities, the outstanding enforcement actions affected, and the DOE's reasons for entering into the settlement. The Court rejects the plaintiffs' contention that these paragraphs are insufficient as a matter of law to comply with 10 C.F.R. § 205.199J(a).

■ Finally the plaintiffs allege that the Consent Order contains remedies other than restitution to overcharged purchasers, and that such remedies are prohibited by section 209 of the ESA. Section 209 permits a court to order restitution in a judicial enforcement proceeding. It is a grant of power to courts; it does not limit the agency's remedial authority. *Bonray Oil Co. v. DOE*, 601 F.2d 1191 (Temp.Emer.Ct.App. 1979), *aff'g on basis of district court opinion*, 472 F.Supp. 899 (W.D.Okla.1978). In *Bonray Oil*, the court rejected a contention that the agency was forbidden to utilize any type of relief other than injunctive relief in its remedial orders, holding that the powers conferred on the agency by the ESA and the EPAA must be measured "by the broad purposes of the Congressional mandate in both the ESA and the EPAA." 472 F.Supp. at 904. Thus, the remedial provisions of the Consent Order are not in excess of the DOE's authority.

In summary, the Court finds that the Consent Order entered into by Standard and the DOE is reviewable by this Court, but that the scope of review is limited to determining whether the terms of the Consent Order were in excess of the DOE's authority. The Court finds that none of the factual allegations of the plaintiffs in Counts II, III, or IV of the complaint raise triable issues regarding the authority of the DOE with respect to this Consent Order. Therefore, these counts are dismissed for failure to state a cause of action pursuant to rule 12(b)(6) and rule 56 of the Federal Rules of Civil Procedure. Because of this determination, the Court finds it unnecessary to deal with the defendants' arguments regarding standing to sue.

Accordingly,

IT IS ORDERED that Counts II, III, and IV of the complaint be, and hereby are, dismissed.