LO–VACA GATHERING COMPANY,
Plaintiff,

v.

The RAILROAD COMMISSION OF
TEXAS, Defendant.

No. 5–23.

Temporary Emergency Court of Appeals.

Argued Sept. 23, 1977.

Decided Oct. 19, 1977.

Jefferson D. Giller, Fulbright & Jaworski, Houston, Tex., with whom William B. Wagner and Daniel K. Hedges, Houston, Tex., of the same firm, and William T. Hurn and Richard A. Wells, Lo-Vaca Gathering Co., Houston, Tex., were on the brief for plaintiff.

J. David Hughes, Chief, Public Utilities & Transportation Division, Asst. Atty. Gen. Office, Austin, Tex., with whom John L. Hill, Atty. Gen. of Tex., Austin, Tex., were on the brief for defendant.

Before CHRISTENSEN, INGRAHAM and JAMESON, Judges.

INGRAHAM, Judge.

Plaintiff, Lo-Vaca Gathering Company (Lo-Vaca) operates a natural gas pipeline for the purchase, transportation and sale of natural gas in Texas. Lo-Vaca is an "intrastate pipeline" as that term is defined in § 2(3)[1] of the Emergency Natural Gas Act of 1977 (ENGA). Defendant, Railroad Commission of Texas, is an agency of the State of Texas charged with regulating the production and sale of natural gas in Texas. Lo-Vaca filed this original action in the Temporary Emergency Court of Appeals (TECA) under § 10(b)[2] of the ENGA, seeking to have certain orders of the Railroad Commission set aside.

The disputed Commission orders were issued in response, to action by the Administrator of the Act directing Lo-Vaca to transport natural gas through interstate pipe lines to the northeastern section of the United States.[3] The effect of the orders was to freeze the expenditure of a portion of the revenues collected by Lo-Vaca from these interstate contracts.[4] The gist of Lo-

---

1. An intrastate pipeline is any person (*other than an interstate pipeline*) engaged in the transportation by pipeline of natural gas. 15 U.S.C. § 717 note (Supp. I 1977). An interstate pipeline, as defined in the Natural Gas Act is "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." 15 U.S.C. § 717a(6) (1976). The Natural Gas Act defines "interstate commerce" in the following manner:

"Interstate commerce" means commerce between any point in a State and any point outside thereof, or between points within the same State but through any place outside thereof, but only insofar as such commerce takes place within the United States.
15 U.S.C. § 717a(7).

2. Section 10(b) provides in pertinent part:

(b) Except with respect to enforcement of orders or subpenas (sic) under section 4(e), the Temporary Emergency Court of Appeals, established pursuant to section 211(b) of the Economic Stabilization Act of 1970, as amended, shall have exclusive original jurisdiction to review all civil cases and controversies under this Act, including any order issued, or other action taken, under this Act. 15 U.S.C. § 717 note (Supp. I 1977).

3. The Railroad Commission claimed authority under Tex.Rev.Civ.Stat.Ann. art. 6053 § 1 (1962) to determine if any revenue above costs or any unexpected revenues are being received by a gas utility and to order the appropriate disposition thereof. Any question as to the extent of the Railroad Commission's statutory authority is not reached on this appeal.

4. Because of our disposition of this case, it is unnecessary to chart the tortuous procedural history of the Railroad Commission orders, or to detail the provisions of the final, court-approved order.

Vaca's complaint is that the Railroad Commission orders conflict with § 6[5] of the ENGA and are therefore preempted by 14[6] of the Act. In order to reach the merits of the Railroad Commission orders, we must first find jurisdiction under the provisions of the Act.

Section 10(b) of the ENGA provides that TECA "shall have exclusive *original* jurisdiction to *review* all civil cases and controversies under [the ENGA], including any order issued, or other action taken, under this Act." 15 U.S.C. § 717 note (Supp. I 1977) (emphasis added). The Railroad Commission has filed a motion to dismiss for lack of jurisdiction, arguing that TECA is limited to the "review" of federal agency orders and other actions taken by the Administrator under the Act. Therefore, the Act does not comprehend review of a state regulatory commission order.

Lo-Vaca seizes upon the word "original," in arguing that TECA can hear any "original" complaint subject only to the restriction that it be a case or controversy arising under the Act. According to Lo-Vaca, this category would include an order of a state regulatory commission.

The ambiguity on the face of the Act is patent. Combined with the fact that no case has yet been decided under the Act, it becomes necessary for us to delve into the legislative history of this provision, and to compare it to those of other enactments granting jurisdiction to TECA.

TECA was established by the Economic Stabilization Act of 1970 (ESA). 12 U.S.C. § 1904 note (Supp.1977). It was given the powers of a circuit court of appeals to hear appeals from the district courts in certain cases and controversies arising under the Act. *Id.* § 211. Subsequently, the Emergency Petroleum Allocation Act (EPAA) was enacted. 15 U.S.C. § 751 *et seq.* (1976). The EPAA extended the jurisdiction of TECA to all appeals under its provisions by incorporation of § 211 of the ESA. *Id.* § 754. Thus, since the time of its creation, TECA has served as an appellate tribunal.[7]

The role of TECA under the ENGA has been altered. TECA retains its former character as an appellate court insofar as it reviews district court orders arising under § 4(e)[8] of the Act. *Id.* § 10(b). For all other cases over which it has jurisdiction under the Act, TECA has replaced the district court as the court of first resort. The statutory grant of jurisdiction to TECA under § 10(b) of the ENGA, therefore, parallels that given the district court under § 211 of the ESA. Thus, it is helpful to examine the power of the district court under the ESA.

The ESA gave the district court jurisdiction over two distinct types of actions. Section 210(a)[9] of the ESA created a private

5. Section 6(a) provides in pertinent part:

The President may authorize any interstate pipeline . . . to contract, upon such terms and conditions as the President determines to be appropriate (including provisions respecting fair and equitable prices), for emergency supplies of natural gas for delivery before August 1, 1977—

. . . . . .

(2) from any intrastate pipeline . . . . .
15 U.S.C. § 717 note (Supp. I 1977).

6. Section 14 provides:

Any order issued pursuant to this Act shall preempt any provision of any program for the allocation, emergency delivery, transportation, or purchase of natural gas established by any State or local government if such program is in conflict with any such order.
15 U.S.C. § 717 note (Supp. I 1977).

7. *But see Exxon Corporation v. Federal Energy Administration,* 516 F.2d 1397 (Em.App.1975), in essentially different context.

8. Section 4(e) gives the President extensive powers of discovery. 15 U.S.C. § 717 note (Supp. I 1977). The district court retains the power to enforce or refuse to enforce orders for discovery, subject to review by TECA.

9. Section 210(a) of the ESA provides:

(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.
12 U.S.C. § 1904 note (Supp.1977).

cause of action against another private party for any person suffering legal wrong under the statute. *Griffin v. United States,* 537 F.2d 1130, 1134–36 (Em.App.1976). Section 211(a) [10] provided a separate legal remedy, one for plaintiffs subject to price controls who have a complaint against the enforcing agency, or for other plaintiffs who have been aggrieved by former decisions or orders that denied administrative relief to which they believe they were entitled under the Act and implementing regulations. *Air Products & Chemicals, Inc. v. United Gas Pipe Line Co.,* 503 F.2d 1060, 1063 (Em.App.1974). This latter type of action constitutes a "review" of agency action or decision making.

Though both courts entertain original complaints, the jurisdiction of TECA under the ENGA is not so broad as that of the district court under the ESA. The ENGA provides this § 211 or administrative remedy in § 10(b). The ENGA does not contemplate a private remedy like that set out in § 210 of the ESA. Lo-Vaca cites *Manning v. University of Notre Dame du Lac,* 484 F.2d 501 (Em.App.1973), for the proposition that the ESA gave the district court power to hear cases initiated by an original complaint. Lo-Vaca concludes by analogy that TECA can also hear such a case under the ENGA. What Lo-Vaca fails to disclose, however, is that *Manning* was initiated under § 210 of the ESA, not § 211. If the ENGA had created a private cause of action like that provided in § 210 of the ESA, it is arguable that TECA would have jurisdiction to hear an original complaint under the ENGA. This argument is precluded by the fact that the ENGA envisioned no such private cause of action.

■ This conclusion is buttressed by the language of § 10(b) itself. Congress would not have used the word "review" if it had envisioned TECA taking jurisdiction of an original complaint. Viewed in this manner, the use of the word "original" can be reconciled with the word "review." TECA has original jurisdiction only in the sense that it has replaced the district court as the first court of law to review certain cases.

Granted that TECA is confined to the "review of existing cases and controversies under the ENGA, the question remains— what types of cases can the court review? Section 10(b) extends jurisdiction to:

"(1) cases and controversies under this Act,

(2) including any order issued, or other action taken under this Act."

15 U.S.C. § 717 note (Supp. I 1977). Relying largely upon legislative history, the Commission argues that category (1) is no larger than category (2)—that TECA can only review orders issued and action taken under the Act. Since the Commission's orders were not orders issued or action taken under the Act, TECA has no jurisdiction.

Lo-Vaca contends that unless the word "including" is to be stripped of its meaning, category (1) must be inclusive of and broader than category (2). Therefore, the jurisdiction of TECA extends beyond the review of orders issued or action taken under the Act to any case or controversy arising under the Act. According to Lo-Vaca, since its suit hinges upon an interpretation of the Act, it arises from the Act and TECA has exclusive original jurisdiction to hear the case.

The Commission has the better arguments on this phase of the issue also. Section 211 of the ESA has been interpreted to grant jurisdiction only for review of federal administrative decisions, or action taken under the Act. *See Air Products & Chemicals, Inc. v. United Gas Pipeline Co.,* 503 F.2d at 1063 (Em.App.1974). As can be seen, § 211 of the ESA and § 10(b) of the ENGA are almost identical. Section 211 gives the court:

"exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder."

---

**10.** Section 211(a) of the ESA provides in pertinent part:

(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder.

12 U.S.C. § 1904 note (Supp.1977).

12 U.S.C. § 1904 note (Supp.1977). Section 10(b) gives the court:

"exclusive original jurisdiction to review all civil cases and controversies under this Act, including any order issued, or other action taken, under this Act."

15 U.S.C. § 717 note (Supp. I 1977). Therefore, since § 211, without § 210, confines jurisdiction to review of regulations or orders issued under the ESA, it is reasonable to conclude that Congress intended to restrict § 10(b) of the ENGA in a similar manner.

The legislative history of § 10(b) reenforces this conclusion. As originally introduced in each house of Congress, § 10(b) gave TECA:

"exclusive original jurisdiction to review any order issued or other action taken under this Act."

123 Cong.Rec.S. 1540 (daily ed. Jan. 26, 1977) (remarks of Sen. Stevenson).

■ The clear import of this language is to confine the jurisdiction of TECA to the review of action taken by the Administrator under the Act. There is no indication in the official explanation of the Act that any different meaning was ever intended. *See id.* S. 1544.

The phrase "cases or controversies arising under the Act, including  . .  ." was added by Senator Stevenson in a technical amendment. *Id.* S. 1666–67 (daily ed. Jan. 31, 1977). No reason was given in the Congressional Record for the addition and no debate accompanied the change. *See id.* S. 1667. It can be assumed that no substantive change was contemplated.[11]

After studying the legislative history, the language of the Act, and judicial construction of acts similar to the ENGA, we find that Congress meant for TECA to have no jurisdiction over an original complaint challenging an order of a state regulatory commission.

Practical considerations cry out for this construction of the Act. Lo-Vaca admits there is only an original complaint before this court, and that no record exists from which an appellate argument can be made. Lo-Vaca would fill this void by transforming TECA into a trial level court to receive evidence and develop facts. We decline the invitation. We realize that Congress has extended our jurisdiction by cutting out the district court to provide direct review of agency action. We do not believe, however, that it was the intent of Congress to convert TECA into a trial level court for every cause of action arising under the ENGA.

The complaint should be dismissed for want of jurisdiction.

SO ORDERED.

JAMESON, Judge (concurring).

I agree that the complaint should be dismissed. In spite of Judge Ingraham's well considered opinion, I have some question with respect to the conclusion that this court lacks jurisdiction. Even if the court has jurisdiction of the controversy, however, I am convinced that the complaint should be dismissed on the merits.

I agree with Judge Ingraham that the "ambiguity on the face of the Act is patent". The bill as introduced was clear. It provided in section 10(b):

"Except with respect to enforcement or orders or subpoenas under section 4(e), the Temporary Emergency Court of Appeals shall have exclusive original jurisdiction to review any order issued, or other action taken, under this Act."

The bill was amended in the Senate to provide "exclusive jurisdiction to review all cases and controversies under this Act, including any order issued, or other action taken, under this Act". It was further amended in conference to insert the word

---

11. The Railroad Commission is probably correct in its statement that the "amendment operated only to conform the jurisdictional grant of § 10(b) to the basic requirements of federal jurisdiction as contained in Article III of the Constitution." Memorandum in Support of Motion to Dismiss of the Railroad Commission of Texas, page 5.

"civil" before the words "cases and controversies".[1]

Lo-Vaca has alleged that the orders issued by the Railroad Commission are in conflict with sections 6 and 14 of the Act. Section 6 provides in pertinent part:

"The President may authorize any interstate pipeline . . . to contract, upon such terms and conditions as the President determines to be appropriate (including provisions respecting fair and equitable prices), for emergency supplies of natural gas for delivery before August 1, 1977—" 15 U.S.C. § 717 note (Supp. I 1977).

Section 14 provides:

"Any order issued pursuant to this Act shall preempt any provision of any program for the allocation emergency delivery, transportation, or purchase of natural gas established by any State or local government if such program is in conflict with any such order." 15 U.S.C. § 717 note (Supp. I 1977).

I cannot escape the conclusion that if in fact the Railroad Commission entered an order which was in conflict with an order of an Administrator of the Act providing "for the allocation, emergency delivery, transportation, or purchase of natural gas", this would constitute a case or controversy arising under the Act. In my opinion, however, this is not such a case.

Lo-Vaca was ordered to transport gas pursuant to section 6 under terms deemed to be appropriate by the Administrator. One of these terms was the consideration Lo-Vaca was to receive. Lo-Vaca argues that the Commission, by virtue of its orders, has altered the amount Lo-Vaca will receive for transporting the natural gas. The order

of the Commission, however, relates only to the disposition of the moneys received by Lo-Vaca. It does not change the amount of gas to be sold or transported or the amount to be paid under the contracts. As the Commission argues, its order merely directs Lo-Vaca's application of its revenues pursuant to the Commission's statutory power to establish fair and reasonable rates of charges for natural gas service. The order does not alter the terms of the contracts.

It is clear that the framers of the Act meant for state regulatory bodies to retain their regulatory power over interstate pipelines insofar as they do not conflict with the provisions of the Act. This intention was manifested in the provision of Section 6(c)(2): "Compliance by any pipeline with any order under this subsection shall not subject such pipeline to regulation under the Natural Gas Act . . ."

Nor does the final order of the Commission violate the preemption provision of Section 14. The order does not fall into any of the categories of preempted conduct. It does not seek to regulate the allocation, emergency delivery, transportation, or purchase of gas. The Act does not proscribe the impounding of interstate revenues by a state regulatory body. The present order of the Commission does not interfere with either the transportation or price terms between the buyer and seller under the ENGA contracts. It is concerned only with the disposition of the revenues and is related to the Commission's power to regulate rates.[2]

All of Lo-Vaca's contentions with respect to the disposition of revenues received from the transportation of gas pursuant to orders under the ENGA have been asserted in an action pending in the state courts of Texas.

---

1. As the court's opinion has noted, no reason was given in the Congressional Record for the Senate Amendment. In explaining the Conference Report, Senator Pearson stated that the amendment was "to insure that the Temporary Emergency Court of Appeals review under section 10 would be limited to civil cases. Criminal case would, as under other laws, be referred to Federal District Court for trial". 123 Cong.Rec.S. 1999 (daily ed. Feb. 2, 1977).

2. The cases upon which Lo-Vaca relies, *Northern Natural Gas Co. v. State Corp. Comm'n of Kansas,* 372 U.S. 84, 83 S.Ct. 646, 9 L.Ed.2d 601 (1963) and *FPC v. Corp. Comm'n of Oklahoma,* 362 F.Supp. 522 (W.D.Okl.), aff'd, 415 U.S. 961, 94 S.Ct. 1548, 39 L.Ed.2d 863 (1974) are distinguishable. The orders in both cases clearly interfered with the comprehensive federal regulatory scheme established in the Natural Gas Act and if allowed to stand would have frustrated the purposes of the Act.

In the final order entered by the Commission, Lo-Vaca was permitted to retain a part of the impounded revenues to cover its costs in making gas shipments pursuant to the federal orders. The remaining revenues were ordered credited to existing customers. The state court reversed that portion of the order and required that the revenues be held pending a full rate hearing. This decision has been appealed. In my opinion the propriety of the Commission's present order with respect to the disposition of the revenues received is properly before the Texas courts for resolution and should not be considered by this court. Accordingly I agree that the complaint should be dismissed.