**MGPC, INC., a Wyoming corporation, Plaintiff-Appellant,**

v.

**CANADIAN HIDROGAS RESOURCES, LTD., a Canadian corporation; Hidrogas Ltd., a Canadian corporation; Hidrogas, Inc., a Montana corporation; and The Estate of Evan W.G. Bodrug, Defendants-Appellees.**

No. 9–75.

Temporary Emergency Court of Appeals.

Argued June 17, 1983.

Decided June 29, 1983.

Certiorari Denied Nov. 7, 1983.
See 104 S.Ct. 394.

if unappealed, the decision has *res judicata* effect, an issue we need not decide.

Richard T. Williams, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., with whom Richard F. Ahern, Los Angeles, Cal., of the same firm, and Howard J. Bressler and David L. Huard, Los Angeles, Cal., were on the brief for plaintiff-appellant.

A. Alan Berger, Berger & Miranda, San Jose, Cal., was on the brief for defendants-appellees.

Before ZIRPOLI, MacBRIDE and CRAIG, Judges.

PER CURIAM.

Plaintiff-appellant MGPC, Inc., a seller of propane, seeks to recover $879,163.28 in damages from defendants-appellees Canadian Hidrogas Resources, Ltd., Hidrogas, Inc., Hidrogas Ltd., and the executors of the estate of Evan W.G. Bodrug (collectively referred to as "Hidrogas"). MGPC alleges that Hidrogas did not pay MGPC the contract price for propane that Hidrogas purchased from MGPC between April 1974 and March 1975. The district court denied MGPC recovery and MGPC appeals.

The contract between MGPC and Hidrogas is evinced by a series of telexes. Hidrogas said that it would be willing to pay "full competitive prices and terms consistent with the pricing guidelines authorized under FEO[1] or other government regulators having jurisdiction." MGPC's return telex summarized the agreement, stating: Price: F.O.B. Oedekoven and Kitty [Gillette] plants to be highest permissible by federal or other regulations." Hidrogas responded: "terms and conditions outlined in your telex of April 29 acceptable. Please advise by return prices acceptable to regulators." MGPC answered: "You will have to gamble on outcome of projected meetings with FEO in the same manner as we are."

---

1. Federal Energy Office. Subsequent to the passage of the Emergency Petroleum Allocation Act of 1973, the President established the FEO to promulgate regulations covering crude oil allocation. Executive Order No. 11,748, 38 Fed.Reg. 33,575 (1973). The FEO was superseded by the Federal Energy Administration (FEA) on June 27, 1974, pursuant to the Federal Energy Administration Act of 1974, 15 U.S.C. §§ 761–786 (Supp. V 1975) and section 5(a) of Executive Order 11,790, 39 Fed.Reg. 23,185 (1974).

MGPC began billing Hidrogas for the propane at 17 or 18 cents per gallon (cpg); 8.25 cpg was due immediately and the balance payable on receipt of a favorable ruling from the FEA.[2] Later, the entire amount was billed as due immediately. MGPC sued to collect the difference between the prices invoiced and the lesser amounts paid by Hidrogas from April 1974 to March 1975.

The issue litigated before the trial court was what price MGPC was permitted to charge Hidrogas under the applicable federal pricing regulations. Plaintiff and defendants produced experts who offered their interpretations in support of the parties' computations of the lawful price. The trial court, however, found it difficult to choose between the interpretations offered. The court explained:

> Under the regulations, 10 C.F.R. § 212.-83, Subparts E and K, the maximum allowable price was determined by reference to a complicated and changing formula which allocated a propane producer's increased costs to the products they sold. Determining the maximum lawful price during the contract period requires an interpretation of a number of essential terms and concepts used in the regulations. The expert testimony evinced that many parts of the regulations were subject to multiple constructions and that experts could disagree about their proper application. Both experts presented tenable and generally reasonable constructions of the formulae and computations of the maximum lawful selling price.

*MGPC, Inc. v. Canadian Hidrogas Resources Ltd.*, No. CV 75–576–JWC, opinion at 12–13 (C.D.Cal., Feb. 16, 1983) (Record at Vol. 5, 001610–11).

Because the court could not decide between the interpretations advanced by the parties, it resorted to a burden of proof analysis. The court reasoned that MGPC carried the burden of proving the maximum lawful price during the contract period, be-cause MGPC had the burden of proving that Hidrogas had breached the contract. Since MGPC did not succeed in convincing the trial court that its interpretation of the pricing regulations should prevail, the court found against MGPC.

MGPC argues that the district court should not have decided the case based upon which party had the burden of proof, because interpretation of the regulations in order to determine the maximum lawful price is a question of law, which the trial court had a duty to decide. We agree.

■ The Temporary Emergency Court of Appeals has jurisdiction over this appeal because the case arises under the Emergency Petroleum Allocation Act of 1973, as amended (EPAA). The case involves interpretation of the Mandatory Petroleum Price Regulations issued pursuant to the Act. *See* 12 U.S.C. § 1904 note (§ 211(b)(2)) (1980); 15 U.S.C. § 754(a)(1) (1976); *Citronelle Mobil, etc. v. Gulf Oil Corp.*, 591 F.2d 711, 715–16 (Temp.Emer.Ct. App.), *cert. denied*, 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979). The contract for the sale of propane fixed the price as the "highest permissible by federal or other regulations." To determine whether the prices charged Hidrogas were not above the maximum price MGPC could charge under the federal regulations, the trial court's first task was to interpret the regulations.

■ The trial court recognized that the case depended on interpretation of the regulations. It erred, however, in including interpretation of the regulations in the parties' burden of proof. Such interpretation is a matter of law to be decided by the court. *See Standard Oil Co. v. Department of Energy*, 596 F.2d 1029, 1066 (Temp.Emer. Ct.App.1978); *U.S. v. 320.0 Acres of Land More or Less, etc.*, 605 F.2d 762, 818–819 (5th Cir.1979). The trial court had a duty to decide which of the interpretations advanced by the parties was correct or to apply its own interpretation. The court was entitled to consider the arguments of-

---

2. Federal Energy Administration. On October 1, 1977, the Department of Energy assumed the duties of the FEA pursuant to the Department of Energy Organization Act, 42 U.S.C. § 7101, et seq., and Executive Order No. 12,009, 42 Fed.Reg. 46,267 (1977).

fered by the parties, but it could not treat the meaning of the regulations as a question of fact to be proved by them.

■ Since the trial court has not interpreted the regulations relevant to deciding the maximum lawful price, this case will be remanded. On remand, the trial court must first interpret the relevant terms and concepts used in Subparts E and K of 10 C.F.R. § 212 and Ruling 1975–6, in addition to any other regulations or rulings the court finds applicable. These regulations and rulings should be interpreted in order to determine how the following factors, and any others the court deems relevant, are to be used in fixing the maximum lawful price. The factors include: (1) First sale price; (2) Increased product costs; (3) Increased non-product costs; (4) Banked increased costs; (5) Exceptions relief. After interpreting the regulations, the trial court should apply the facts necessary to calculating the lawful price.[3]

Although the trial court's opinion indicates that the federal pricing regulations are susceptible of interpretation, the court also described the regulations as "ambigu-ous, multifarious and changing." Opinion at 11 (Record at Vol. 5, 001609). This description suggests that the regulations may not supply a formula for fixing the price. In such cases, a reasonable price is to be substituted. See Cal.Com.Code § 2305 (West 1964);[4] *North Central Airlines v. Continental Oil Co.*, 574 F.2d 582, 592 (D.C. Cir.1978) (when a price is fixed based on a standard set by an agency, and no standard is set, the court should substitute a reasonable price). On remand, the court should first attempt to ascertain the price by interpreting the regulations. If the court finds, however, that the agreed upon standard failed—i.e., that the federal pricing regulations cannot supply a price for propane during the time the contract was in force— the court should determine a reasonable price.

---

**3.** If on remand the trial court encounters difficulty in supplying a formula for fixing the price, it might consider the wisdom of seeking an *amicus* brief from the Department of Energy. *See Dyke v. Gulf Oil Corp.*, 601 F.2d 557, 569 (Temp.Em.Ct.App.1979) (suggesting *amicus curiae* appearance).

**4.** Section 2305. Open Price Term. (1) The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if

(a) Nothing is said as to price; or

(b) The price is left to be agreed by the parties and they fail to agree; or

(c) The price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded.