ELF AQUITAINE, INC., a Delaware corporation, Plaintiff,

v.

PLACID OIL COMPANY, a Delaware corporation, Defendant.

ELF AQUITAINE, INC., a Delaware corporation, Plaintiff,

v.

SUN PRODUCTION COMPANY, a Delaware corporation, Defendant.

ELF AQUITAINE, INC., a Delaware corporation, Plaintiff,

v.

PLACID REFINING COMPANY, a Delaware corporation, Defendant.

ELF AQUITAINE, INC., a Delaware corporation, Plaintiff,

v.

MURPHY OIL USA, INC., a Delaware corporation, Defendant.

Civ. A. Nos. 85–182 MMS to 85–185 MMS.

United States District Court, D. Delaware.

Dec. 27, 1985.

Stephen E. Herrmann, of Richards, Layton & Finger, Wilmington, Del. (John P. Mathis, Randolph Q. McManus, and Christopher J. Braun, of Baker & Botts, Washington, D.C., of counsel), for plaintiffs.

John H. Small, and Norman L. Pernick, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del. (Allen Weed, and Mark M. Petzinger, of Shank, Irwin & Conant, Dallas, Tex., of counsel), for defendants Placid Oil Co. and Placid Refining Co.

William O. LaMotte, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (James Baller, and Barbara I. Berschler, of Baller & Hammett, P.C., Washington, D.C., of counsel), for defendant Sun Production Co.

Lawrence C. Ashby, of Ashby, McKelvie & Geddes, Wilmington, Del., (David A. Holzworth, M. Bradford Moody, and C. Fairly Spillman, of Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., of counsel), for defendant Murphy Oil USA, Inc.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiff Elf Aquitaine, Inc. ("Elf") brought separate suits in this Court against four purchasers of its crude oil, alleging that they failed to pay the full amounts due under the agreements of sale. Presently before the Court are motions filed by defendants to dismiss the complaints for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted under the Delaware statute of limitations.[1] For the reasons expressed below, the Court will dismiss the complaint in each case for lack of subject-matter jurisdiction.

### Facts

Elf and each of the defendants are Delaware corporations. Elf entered into agreements with defendants for the sale of crude oil produced from Elf's interests in various oil fields. Complaint at ¶ 6.[2] The

1. Elf filed separate suits against Placid Oil Co. (C.A. No. 85–182–MMS); Sun Production Co. (C.A. No. 85–183–MMS); Placid Refining Co. (C.A. No. 85–184–MMS); and Murphy Oil USA, Inc. (C.A. No. 85–185–MMS).

   A motion to dismiss was filed by Sun Exploration and Production Co., the successor in interest to Sun Production Co., and jointly by Placid Oil Co. and Placid Refining Co. on both of the grounds stated in the text. Defendant Murphy Oil USA, Inc. ("Murphy") filed a brief in aid of the Court's jurisdiction and moved to dismiss on the statute of limitations ground alone.

   A suit similar to those before this Court was filed by Placid Corporation against Murphy in Texas state court. On Murphy's motion, the case was removed to federal district court. C.A. No. 3–85–0801 (N.D.Tex.). Plaintiff has moved to remand the action to state court and defendant Murphy has moved to transfer the case to this Court and to dismiss for lack of jurisdiction.

2. Elf's complaints against each of the defendants are virtually identical, except for the identification of different oil fields and dates of agreement and sale. This opinion will cite to the complaint and briefs in Civil Action No. 85–182 unless otherwise indicated. The complaint in that action is identical in all relevant aspects to the complaints in the other actions.

agreements specified that the price for each barrel of oil delivered would be a benchmark market price, based on Elf's "posted price per barrel (42 U.S. standard gallons) for like grade, gravity and quality of oil produced in the same field or area to which applicable and in effect on the day of the date of delivery." *Id.* at ¶ 8.

During the relevant period the price for oil was subject to the Department of Energy ("DOE") Mandatory Petroleum Allocation and Price Regulations, 10 C.F.R. Part 212 (revoked). These regulations were promulgated pursuant to the Emergency Petroleum Allocation Act of 1973, 87 Stat. 628, 15 U.S.C. § 751 *et seq.* (1982). In general, the regulations, which set ceiling prices at which producers could sell their oil, precluded Elf from charging the market price called for in its agreements.

The Tertiary Incentive Program ("TIP") was an exception to the general price control scheme. *See* 10 C.F.R. § 212.78 (1980) (revoked). TIP was established to encourage producers to undertake more expensive enhanced recovery projects, which otherwise would be uneconomical under price controls. *See* 44 Fed.Reg. 51148 (Aug. 30, 1979). The TIP regulations authorized a qualified producer to sell crude oil, otherwise subject to price controls, at the market price in order to recoup up to 75 percent of the allowed expenses it had incurred and paid in connection with the establishment or expansion of a "qualified tertiary enhanced recovery project." 10 C.F.R. § 212.78(a)-(c) (1980) (revoked). The producer was required to certify to the purchaser that the oil qualified under TIP. *Id.* § 212.131(a)(4). Crude oil originally sold under price controls could be recertified as tertiary incentive crude oil within

two months after its production and sale. *Id.* § 212.131(a)(6).

On January 28, 1981, the President issued Executive Order 12287, immediately exempting petroleum products from price and allocation controls adopted pursuant to the Emergency Petroleum Allocation Act. *See* Executive Order No. 12,287, 46 Fed. Reg. 9909 (Jan. 30, 1981). Crude oil sold during December 1980 and January 1981 could be certified or recertified retroactively as tertiary incentive crude oil in accordance with 19 C.F.R. 212.131 during the two-month period following the month in which the oil was sold if the oil would have otherwise qualified prior to the Executive Order. DOE Ruling 1981–1, 46 Fed.Reg. 12945, 12947 (question no. 5) (Feb. 19, 1981). *See Union Oil Co. v. DOE,* 688 F.2d 797 (TECA 1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1186, 75 L.Ed.2d 433 (1983) (upholding ruling).[3]

The crude oil at issue in these cases was originally sold in December 1980 and January 1981 as controlled oil, and later recertified as tertiary incentive crude oil. Elf invoiced the additional amounts to each of the defendants, but they have refused to make payment. In each of the instant suits, Elf seeks to recover the amount allegedly due it as tertiary incentive revenue: the difference between the contract amounts and the controlled price amounts.[4]

**Subject-Matter Jurisdiction**

The parties in these actions are all Delaware corporations. Hence, diversity is lacking and subject-matter jurisdiction must be by means of federal-question jurisdiction. In its complaint, Elf alleges three statutory bases for federal subject-matter jurisdiction: 28 U.S.C. § 1331; Section 211(a) of the Economic Stabilization Act of 1970; and 12 U.S.C. § 1904 (note).[5] Elf

---

For the purposes of these motions to dismiss, the facts alleged by plaintiff Elf will be taken as correct.

3. For a more detailed description of crude oil allocation and price regulations, see *Union Oil,* 688 F.2d at 800–04; *Exxon Corp. v. DOE,* 601 F.Supp. 1395, 1398–1401 (D.Del.1985).

4. Elf is alleging damages of $481,044.49 against Placid Oil Co.; $207,244.37 against Sun Produc-

tion Co.; $56,318.89 against Placid Refining Co.; and $343,137.12 against Murphy Oil USA, Inc. Elf also seeks interest on these amounts plus costs and attorneys' fees.

5. The Emergency Petroleum Allocation Act of 1973 incorporated sections of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 (note) (Supp. V 1970), dealing with administration and enforcement. *See* 15 U.S.C. § 754(a)(1).

contends these provisions confer jurisdiction "because the rights and obligations of the Plaintiff and Defendant under their agreements with respect to the sale of crude oil were subject to the regulations of the Department of Energy under the Mandatory Petroleum Allocation and Price Regulations, promulgated pursuant to the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751(b)." Complaint at ¶ 1.

### 1. *28 U.S.C. § 1331*

Under 28 U.S.C. § 1331, federal-question jurisdiction extends to "all civil actions arising under the Constitution, laws, or treaties of the United States." The complaint makes no reference to the Constitution or treaties; at issue here is whether this is an action "arising under" federal law.

■ As the Supreme Court recently discussed, the "arising under" phrase has resisted precise definition since the first version of Section 1331 was enacted in 1875. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8–9 103 S.Ct. 2841, 2845–46, 77 L.Ed.2d 420 (1983); *see also Trent Realty Associates v. First Federal Savings & Loan Ass'n*, 657 F.2d 29, 32 (3d Cir.1981); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3562 (1984). It is clear, however, that Section 1331 federal jurisdiction will not arise if the claim does not satisfy the "well-pleaded complaint" rule. *See Franchise Tax Board*, 463 U.S. at 9–12, 103 S.Ct. at 2846–48; *Trent Realty*, 657 F.2d at 33.

### Well-Pleaded Complaint Rule

■ Under the well-pleaded complaint rule, whether a case arises under the laws of the United States for the purposes of Section 1331 "must be determined from what necessarily appears in the plaintiff's statement of his own claim ... unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Board*, 463 U.S. at 10, 103 S.Ct. at 2846

(*quoting Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914)). The complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief reasonably depends on resolution of a substantial question of federal law." *Id.* at 27–28, 103 S.Ct. at 2856. Absent that, jurisdiction is not conferred by Section 1331 "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Id.* at 14, 103 S.Ct. at 2849; *see Louisville and Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) (jurisdiction lacking over breach of contract action in which Constitution allegedly invalidated anticipated federal defense); *see also Pan American Petroleum Corp. v. Superior Court*, 366 U.S. 656, 81 S.Ct. .1303, 6 L.Ed.2d 584 (1961) (state-court jurisdiction existed for contract overcharge actions although provisions of Natural Gas Act would certainly be examined by way of defense).

■ In this case, Elf acknowledges that federal law does not create its breach of contract cause of action. It claims that federal subject-matter jurisdiction exists under the "substantial question" alternative outlined in *Franchise Tax Board*. Elf argues that, absent its compliance with the TIP regulations, it could not demand a contract price in excess of the price ceilings. Thus, its rights to the contract price are "inextricably tied to Elf's participation in, and compliance with, the DOE's Tertiary Incentive Program." Brief in Opposition at 14.

Plaintiff's argument is unavailing. Reference to federal regulations is not needed to state this breach of contract claim. Only if the price control regulations are cited by the purchasers as a defense to Elf's contract claim for the market price will Elf need to show that the oil was exempt under TIP.[6] Compliance with the

---

6. Defendants could choose to defend on grounds unrelated to the regulations. For example, Murphy's answer sets forth affirmative defenses based, *inter alia*, on the statute of limi-

TIP regulations is not an essential element of its affirmative case. *See Phillips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974) (per curiam) (no § 1331 jurisdiction where effect of federal energy statutes only to overcome a potential defense to state-law *quantum meruit* action); *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir.1974) (federal regulation of contract does not mean that all aspects of its performance are to be governed by federal law rather than state contract law); *Westland Oil Development Corp. v. Summit Transportation Co.*, 481 F.Supp. 15 (S.D.Tex.1979) (no § 1331 jurisdiction simply because industry regulated, or because breach of contract by defendant allegedly subjected plaintiff to liability under federal law), *aff'd*, 614 F.2d 768 (TECA 1980) (per curiam). *Cf. Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375 (10th Cir.1978), *cert. denied*, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979) (plaintiff raised federal question by claiming that federal regulations entitled it to *more* than the contract price).

Plaintiff artfully characterizes the relief it seeks as "tertiary incentive revenue due," suggesting that its right to the extra amount was conferred and determined by federal law. In fact, Elf's claim is for the exact amount specified in its agreements: the market price. While Elf's right to recover the market price under its contracts may well *ultimately* depend upon its compliance with the relevant DOE regulations, it does not *necessarily* depend upon compliance.

The situation in this case is much like that in *Franchise Tax Board*. In that case, California law created a set of conditions, without reference to federal law, under which a tax levy could be enforced. The state sued in state court for damages related to defendant's failure to honor levies and a declaration that the Employee Retirement Income Security Act of 1974 (ERISA) did not preempt its right to tax the defendant plan. In unanimously holding that federal jurisdiction was lacking for the damages claim, the Court noted that federal law would become "relevant only by way of a defense to an obligation created entirely by state law, and then only if [the state] has made out a valid claim for relief under state law." 463 U.S. at 13, 103 S.Ct. at 2848. The well-pleaded complaint rule squarely applied. *See id. Cf. Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (jurisdiction exists for claim that state laws *are* preempted by ERISA).

As in *Franchise Tax Board*, in this case Delaware common law created an action for breach of contract without reference to federal law. Federal price control and tertiary incentive program regulations will become relevant only in the context of a defense and only if Elf has made out a valid state-law contract claim.

Following *Franchise Tax Board*, the Third Circuit Court of Appeals recently found federal subject-matter jurisdiction lacking in *Stibitz v. General Public Utilities Corp.*, 746 F.2d 993 (3d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). Plaintiffs in *Stibitz* brought a tort and contract class action against various defendants alleging harm from increased utility rates imposed after the accident at the Three Mile Island nuclear power facility. The parties all argued affirmatively that federal subject-matter jurisdiction existed because the litigation would necessarily implicate the Price-Anderson Act by requiring the court to determine its scope and construe its terms.[7] They argued in particular that the case could turn on the meaning of statutory terms such as "public liability" and "nuclear incident," and noted the great federal

---

tations, laches, unclean hands, failure to join a necessary party, and waiver. *See* Dkt. 6 at 7.

**7.** The Price-Anderson Act, among other things, provides for a system of indemnification and limited liability, under certain circumstances, in the event of a nuclear "incident." *See* 42 U.S.C. at § 2210. The Act also requires defendants to waive certain defenses they might otherwise enjoy under state law. *See id.; Stibitz*, 746 F.2d at 995.

interest in the proper application and construction of the Act.

Judge Seitz, sitting with Retired Justice Stewart and Judge Adams, invoked the well-pleaded complaint rule to deny jurisdiction. The court noted that a claim does not arise under a federal law unless the right or immunity created by the law is "an element, and an essential one, of the plaintiff's cause of action." *Id.* at 996 (quoting *Franchise Tax Board*, 463 U.S. at 11, 103 S.Ct. at 2847, quoting *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)). In *Stibitz*, the Court held that none of the Price-Anderson elements was essential to plaintiff's case under state tort and contract law, and so jurisdiction was not established. The same reasoning applies to the present case.

Finally, the Court notes its own decision in *Northwest Central Pipeline Corp. v. Mesa Petroleum Co.*, 576 F.Supp. 1495 (D.Del.1983). In that case, federal jurisdiction did not exist for any of the three declaratory judgment and injunctive claims made by plaintiffs in a contract dispute. In language fully applicable to the present case, this Court held that the suit "does not arise under federal law even though the [state court] will probably be compelled to interpret federal law in rendering its decision." *Id.* at 1500. More specifically with regard to the first two claims, this Court held that "[a]lthough the application of the [Natural Gas Act] and [Natural Gas Policy Act] to this contract probably will arise in defense to plaintiff's state law contract claims, that eventuality does not convert those contract claims into federal claims."[8]

**Pragmatic Considerations**

Plaintiff contends that the Court must take into account "pragmatic considerations," which assertedly weigh in plaintiff's favor, if doubt exists as to federal-question jurisdiction. *See* C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure*

(1984) § 3562 at 47 and cases cited. Specifically, Elf cites the effect on the federal caseload, the extent to which such cases will actually turn on federal law, and the statutory requirement that challenges to an agency rule or regulation must be heard in federal court.

First of all, the Court has no doubt that the well-pleaded complaint rule precludes subject-matter jurisdiction under Section 1331 in this case. Even if this were a "close case," however, the Court questions whether "pragmatic considerations" should be used to tip the balance for federal jurisdiction. *See Winsor v. United Airlines, Inc.*, 159 F.Supp. 856, 860 (D.Del.1958) (court should decline jurisdiction of removed case where jurisdiction is questionable). Considering the effect of granting jurisdiction on the federal caseload, for example, seems patently inappropriate to an inquiry as to the Court's authority to hear a case. Likewise, considering whether as a practical matter the case will turn on federal law undermines the longstanding doctrine of the well-pleaded complaint rule.

Finally, Elf asks the Court to include as a significant pragmatic consideration the specific statutory requirement that any challenge to the validity of an agency regulation, raised by either complaint or defense, must be heard by a federal court. *See* Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 754(a) (1982), *incorporating* Economic Stabilization Act of 1970 ("ESA"), § 211(a), 12 U.S.C.A. § 1904 (note) (1980). Elf suggests that defendants may well challenge some aspect of the TIP regulations and notes that, if they do, the case must be heard by a federal court. Thus, the argument suggests, jurisdiction should be conferred in the first place.

This argument fails on two levels. First, plaintiff again anticipates a defense, in contravention of the well-pleaded complaint

---

**8.** Plaintiff attempts to distinguish *Northwest Central* and other cases by insisting that the application and effect of the federal regulations are "essential ingredients" in its claims. *See, e.g.,* Brief in Opposition at 20. Again, this is not so. Elf can make its contract claim without reference to those regulations or to the price controls. Only if the defendants cite the controls will plaintiff's compliance with the regulations granting an exemption become an essential ingredient to its case.

rule. Second, plaintiff's argument is contradicted by the very statute it cites. Section 211(a) explicitly states:

> [N]othing in this subsection ... affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by an agency under this title) raised in any proceeding before such court. If in any such proceeding an issue by way of defense is raised based on the constitutionality of this title or the validity of agency action under this title, the case shall be subject to *removal by either party* .... (emphasis added).

The statute therefore contemplates that contract actions such as the present one would be brought in state court. Only if and when the constitutionality of the statute or the validity of agency action is challenged can either party remove. The ability of the *plaintiff* to remove underscores the intent that plaintiffs first bring suit in state court. Thus, rather than weighing in favor of finding federal jurisdiction in this case, Section 211(a) further compels granting defendants' motion to dismiss.[9]

Strict application of the well-pleaded complaint rule might appear to be an overly mechanical approach that sacrifices substance for form. It is beyond doubt, however, that the rule must be applied even though its proper application "may produce awkward results." *Franchise Tax Board,* 463 U.S. at 4, 103 S.Ct. at 2843–44. In *Franchise Tax Board,* the Supreme Court denied federal jurisdiction although the substantive issue was described as "an important one, which affects thousands of federally regulated trusts and all non-federal tax collection systems, and [which] must eventually receive a definitive, uniform resolution." *Id.* In *Stibitz,* the Court of Appeals for the Third Circuit found no jurisdiction in a case that necessarily involved determining the scope and meaning of the Price-Anderson Act, and despite the strong federal interest in nuclear energy policy. 746 F.2d 993. This Court cannot do otherwise in the present case, where the federal interest is less by reason of the federal program no longer being in existence.

Because this case falls squarely within the bounds of the well-pleaded complaint rule, jurisdiction cannot be found under 28 U.S.C. § 1331.[10]

### 2. *Other Grounds for Jurisdiction*

In its complaint, Elf also alleged jurisdiction pursuant to Section 211(a) of the Economic Stabilization Act of 1970 and 12 U.S.C. § 1904 (note) as a whole.[11] These

---

9. This reading of the statute is supported by the legislative history. The House bill had given the federal courts exclusive jurisdiction over "litigation stemming from regulations and orders" issued under the ESA. *See* H.R.Rep. No. 714, 92d Cong., 1st Sess. 8 (1971). The Senate, on the other hand, made it "explicit" that state courts could hear any defense other than those challenging the constitutionality of the Act or the validity of regulations issued under it: "If the defense is simply one concerning the applicability of a regulation to a party such case would stay in the State court, the issue of applicability could be decided in that court, and appeals would proceed through the procedure established for that court." S.Rep. No. 507, 92d Cong., 1st Sess. 10 (1971), U.S.Code Cong. & Admin.News 1971, pp. 2283, 2292. The Senate provision was ultimately adopted. H.R.Rep. No. 753, 92d Cong., 1st Sess. 20–21 (1971).

10. Defendant Murphy's motion for dismissal, which relies wholly on statute of limitations

grounds, was predicated on a vigorous argument in favor of this Court's subject-matter jurisdiction. Nevertheless, parties cannot confer or consent to subject-matter jurisdiction where it does not exist. *Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites De Guinea,* 456 U.S. 694, 701–02, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982); *Stibitz,* 746 F.2d at 995–96. Jurisdiction under Section 1331 must therefore be denied in each of the four suits.

11. These grounds were not argued by Elf after being challenged in briefs by defendants Placid Oil Co., Placid Refining Co., and Sun Production Co. Defendant Murphy, however, did take up and elaborate upon these grounds as part of its argument that Elf's suit against it should be dismissed on the basis of the Delaware statute of limitations and not lack of subject-matter jurisdiction. The Court granted defendants Placid Oil Co. and Placid Refining Co. leave to file a supplemental brief addressing the argu-

grounds, as well as those urged by defendant Murphy, are without merit.

Section 211(a) of the Economic Stabilization Act ("ESA") states that federal district courts "shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder...." 12 U.S.C. § 1904 (note) (Supp. V 1980). This provision confers jurisdiction for review of federal administrative decisions or actions taken under the Act, not for disputes that are purely private. *See Lo-Vaca Gathering Co. v. Railroad Commission,* 565 F.2d 144, 147 (TECA 1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 768 (1978); *Air Products & Chemicals, Inc. v. United Gas Pipe Line Co.,* 503 F.2d 1060, 1063 (TECA 1974).[12] Moreover, for the reasons discussed earlier, Elf's breach of contract action cannot be said to "arise under" the DOE regulations.

Defendant Murphy cites cases dealing with the scope of TECA's appellate jurisdiction under Section 211(b)(2) to support its argument that this Court has subject-matter jurisdiction under Section 211(a). The Court of Appeals for the Second Circuit has noted, however, that the scope of the "arising under" language of Section 211(b)(2) is broader than that of Section 211(a). *See Coastal States Marketing, Inc. v. New England Petroleum Corp.,* 604 F.2d 179, 186 (2d Cir.1979). Section 211(a) explicitly states that it does not affect the power of a state court to determine any ESA issue (except the validity or constitutionality of the Act or regulation) injected into a state court case by way of defense. *Id.* at 183. Federal appellate review of such cases is limited to the Supreme Court. *Id.* The federalism and comity concerns that arise in the context of state-court versus federal-court jurisdiction, however, are not present when the issue is whether TECA or the courts of appeals have jurisdiction. *Id.* at 183, 186. Moreover, considerations that are valid in defining a federal trial court's jurisdiction do not necessarily apply in determining the appellate jurisdiction of a federal court. *Id.* at 186.[13]

In addition, the cases cited by Murphy involve situations in which the federal issue arose either directly as part of plaintiff's case or as a counterclaim, both of which are absent in the matter *sub judice.* In *Sohio Petroleum,* the parties had agreed to the sale of oil at the seller's "posted well price." 573 F.2d at 1261. After inadvert-

---

ments raised by defendant Murphy in support of the existence of subject-matter jurisdiction.

**12.** Judge Pollak has noted an apparent discrepancy in TECA cases regarding the relationship between sections 210 and 211 of the ESA. *See Boehm v. Gulf Oil Co.,* 496 F.Supp. 1060, 1064 n. 5 (E.D.Pa.1980) (comparing *Lo-Vaca* and *Griffin v. United States,* 537 F.2d 1130 (TECA 1976)). In *Griffin,* the court stated that Section 211 is the statute's jurisdictional grant while Section 210 establishes specific causes of action. *Air Products, Lo-Vaca,* and other cases, however, distinguished between actions for legal or equitable relief against private parties pursuant to Section 210, and actions for equitable relief against the government pursuant to Section 211. TECA later explained that *Griffin* "departed from this view of the statutory scheme ... [only] to reconcile the Act with the demands of the Fifth Amendment." *McCulloch Gas Processing Corp. v. Canadian Hydrogas Resources, Ltd.,* 577 F.2d 712, 718 (TECA), *cert. denied,* 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126 (1978) (citing *Air Products* and other cases). *See also Dempsey v. Rhodes Oil Co.,* 620 F.2d 274, 278 (TECA 1980) (§ 210(a) confers jurisdiction; *citing Manning v.*

*Notre Dame du Lac,* 484 F.2d 501, 503–04 (TECA 1973); *Lo-Vaca,* 565 F.2d at 146); *Wilmington Education Ass'n v. Board of Public Education,* 389 F.Supp. 621, 625 n. 7 (D.Del.1975) (jurisdiction if it exists, is also conferred by [§ 210(a) ] ).

**13.** Murphy also cited *Sohio Petroleum v. Caribou Four Corners, Inc.,* 573 F.2d 1259, 1262–63 (TECA 1978), and *Citronelle-Mobile Gathering Inc., v. Gulf Oil Corp.,* 591 F.2d 711 (TECA), *cert. denied,* 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979), for the proposition that "TECA has consistently read the 'arising under' language of § 211 more broadly than the identical language of the federal question jurisdiction statute." Both of these cases, however, deal with TECA's jurisdiction under Section 211(b)(2): "[TECA] shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder." Thus neither of these cases is applicable to the determination of jurisdiction under Section 211(a) in this case.

ently billing the purchaser at the controlled price, seller attempted to recover the difference between that price and the uncontrolled market price, to which it claimed to be entitled under the "stripper well" exemption. *Id.* at 1261–62. The purchaser counterclaimed for a refund of payments made at the uncontrolled price. The trial court entered judgment for the seller and dismissed the counterclaim. *Id.* at 1262. On appeal, TECA *sua sponte* raised the issue of its jurisdiction. TECA first noted that "plaintiff's complaint was clearly an action on a contract with jurisdiction allegedly based solely on diversity of the parties." *Id.* The purchaser's counterclaim, however, "put in issue the applicability of the EPAA ... [and] clearly involved an interpretation of [the applicable] regulations...." *Id.* In light of the counterclaim and the extensive findings of fact arising out of the district court's interpretation of the price control exemption, TECA jurisdiction existed. *Id.* at 1262–63.

In *Citronelle-Mobile,* the seller of crude oil sued the purchaser for the amount due under their contract. 591 F.2d at 713. The purchaser asserted the defense that the EPAA regulations imposed a ceiling price lower than the contract price, and successfully counterclaimed for amounts it earlier had paid in excess of the controlled price. *Id.* at 713–14. The seller challenged TECA's jurisdiction to hear its appeal, characterizing the case as a simple breach of contract dispute. 591 F.2d at 715. The TECA court held that it did have jurisdiction, however, because "[the purchaser's] counterclaim clearly arises under the EPAA and is so closely related to [the seller's] complaint that the resolution of the litigation in its entirety requires application and interpretation of EPAA...." *Id.* at 716. *See also MGPC, Inc. v. Canadian Hidrogas Resources, Ltd.,* 725 F.2d 1376, 1378 (TECA), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983) (suit for contract price of "highest permissible by federal or other regulations"; pos-

sible diversity action); *Mobil Oil Corp. v. DOE,* 728 F.2d 1477 (TECA 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984) (overcharge complaint under § 210(b)). As already discussed, plaintiff's complaint is not dependent upon any federal statute or regulation and no counterclaims have been asserted by defendants.

Murphy also asserts that subject-matter jurisdiction exists under Section 210(a) of the ESA. Section 210(a) created a private cause of action for any person "suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto." It enables a plaintiff to sue someone who has injured him through a violation of the Act or its regulations. *McCulloch,* 577 F.2d at 717; *Lo-Vaca,* 565 F.2d at 146–47; *Air Products,* 503 F.2d at 1060. In the present case, however, the plaintiff does not allege that defendants have violated any regulation. *Cf. Air Products,* 503 F.2d at 1060 (action for overcharges); *Boehm,* 496 F.Supp. at 1061–64 (same). Moreover, Elf has expressly disclaimed Section 210(a) as a jurisdictional basis.[14]

Finally, there is no support for a finding of jurisdiction under 12 U.S.C. § 1904 (note) as a whole, a ground asserted by Elf in its complaint but argued by neither Elf nor Murphy in their briefs.

**Conclusion**

For the foregoing reasons, the complaints by plaintiff Elf Aquitaine, Inc. against each of the defendants will be dismissed for lack of subject-matter jurisdiction. As a consequence, defendants' arguments with regard to the statute of limitations will not be considered.

---

**14.** *See* C.A. No. 85–185–MMS, Dkt. 12 at 12–16 (Plaintiff's Brief in Opposition to Motion of

Murphy Oil USA, Inc. for Dismissal).